DECEMBER TERM, 1873.    145

Coger v. The North West. Union Packet Co.

Coger v. The North West. Union Packet Co.

1. **Persons of color:** RIGHTS OF WHILE TRAVELING: COMMON CARRIER. Under the laws and constitutional amendments of the State and federal government a person of color is entitled to the same rights and privileges while traveling, as a white person is, and cannot be required by any rule or custom, based on distinction of color or race, to accept other or different accommodations than those furnished to white persons.

2. —— A rule or custom of a steamboat requiring persons of color, who are passengers thereon, to be excluded from the regular table and take their meals upon the guards of the boat or in the pantry, is not a reasonable one and cannot be enforced.

3. —— APPLICATION OF RULE. The plaintiff, a quadroon, and teacher in a colored school at Quincy, Illinois, embarked at Burlington on one of defendant's steamboats, engaged as a common carrier of passengers, to be transported from the place last named to Quincy. Before the hour of dinner she sent the chambermaid to purchase a ticket for that meal, and one was brought her with the words "colored girl" written thereon. This she refused to accept, on being informed that it was of a kind usually sold to colored passengers, and only entitled the holder to dinner at a table on the guards of the boat, or in such other place as the clerk might see fit to assign her. The ticket was accordingly returned and the price refunded to her. She then procured a gentleman to buy her a ticket for dinner, containing no conditions or indorsements. When dinner was called she seated herself at the ladies' table in the cabin, whereupon she was requested by the officers of the boat to leave the table and take her meal on the guards or in the pantry, where it would be prepared for her, and on her refusal to comply with this request, she was forcibly removed from the table and cabin. *Held*, in an action for damages for assault and battery, that the defendant was liable.

*Appeal from Lee District Court.*

FRIDAY, SEPTEMBER 19.

ACTION at law to recover damages sustained by plaintiff for an assault and battery committed upon her by the officers of a steamboat used by defendant as a common carrier in navigating the Mississippi river, while she was a passenger thereon, and for forcibly and with violence, removing her from the dinner table of said boat, without cause, and for no improper conduct on her part. The defense pleaded in the answer sets up, at great length, that plaintiff is a colored woman, and that there was a custom or a regulation of all boats of defendant, well known to plaintiff, under which colored persons could not receive state rooms and first class privileges and accommodations; that she purchased a ticket which entitled her to the rights of a colored person under the custom, and gave her no right to meals; that she purchased a ticket for meals, such as, under said regulations of the boat, were sold to

colored persons entitling them to meals upon the guards of the boat or in the pantry, but she returned the same and demanded and received back the money paid for it. Afterward, by fraud, she purchased such a ticket for meals as were sold to white persons; that, under these circumstances, she seated herself at the dinner table with the white passengers of the boat and in a seat that had been assigned to another, whereupon the officers of said boat removed her from the table, having requested her to leave it, which she, with violent and rude language, refused to do, but that no greater force was used than was necessary to take her, against her resistance, from the table. The facts of the case, so far as they are intended as a defense, are particularly stated. There was a trial to a jury, and a verdict for plaintiff. A motion in arrest of judgment and for a new trial, on the grounds that the verdict is not sustained by the evidence and is in conflict with the law, and for alleged errors in instructions given to the jury, was overruled and judgment was rendered upon the verdict. Defendant appeals.

*Howell & Rice* for the appellant.

*McCrary, Miller & McCrary* for the appellee.

BECK, Ch. J. — I. The plaintiff, being in the city of Keokuk, went upon the steamer S. S. Merrill, one of defendant's line of packets navigating the Mississippi river, for the purpose of conveying freight and passengers, to be transported to her home at the city of Quincy, in the State of Illinois. She is a quadroon, being partly of African descent, and was employed as the teacher of a school for colored children in the city where she resided. She applied at the office of the vessel for a ticket and was given one entitling her to transportation, but not to a state-room nor to meals, such as those which, under the custom and regulations of defendant's steamers, are given to colored persons. This, after its terms were explained to her, she returned to the clerk of the boat and its price was returned to

her. She claimed the right to be transported as other first-class passengers, and offered to pay accordingly. This being refused she, at the time, declined to accept a ticket on any other conditions and left the boat. She afterward returned and purchased a ticket, containing the conditions of the one she had refused to accept, printed in red ink thereon in these words: " The holder of this ticket is entitled to meals at an assigned table and first-class cot only — besides transportation." The following words were written across the face of the ticket: " This does not include meals." Before the hour of dinner she sent the chamber-maid to purchase a ticket for that meal and one was brought her with the words, " colored girl," written thereon. Plaintiff applied to the clerk at his office to be informed of the meaning of the writing and was told that it was a ticket of the character sold to persons of her color and entitled her to dinner at a table on the guards of the boat and that, under the conditions of her ticket for transportation, she could be seated for meals in whatever place the clerk saw proper to assign her. She returned the ticket to the clerk, refusing to accept it with the conditions as explained, and the price was repaid to her. After this she requested a gentleman to buy her a ticket for dinner, who bought her one without any indorsements or conditions. It does not appear that the officers of the boat knew, when this ticket was purchased, for whom it was intended. When dinner was announced she seated herself at the ladies' table in the cabin at a place designated for certain ladies traveling on the boat ; this, it does not appear, she knew before seating herself. She was then informed by one of the officers of the boat that she must leave the table, that the seat she occupied was reserved and that her dinner would be, in a short time, ready for her at the place designated by the clerk. The request was for her to leave the table and take her meal on the guards or in the pantry, not to leave the reserved seat and take another. She refused, and thereupon the captain of the boat was sent for, who repeated the request, and, being denied compliance, he proceeded by force to remove her from the table and the

cabin of the boat. She resisted so that considerable violence was necessary to drag her out of the cabin, and, in the struggle, the covering of the table was torn off and dishes broken, and the officer received a slight injury. The defendant's witnesses testify that she used abusive, threatening and coarse language during and after the struggle, but this she denies. Certain it is, however, that by her spirited resistance and her defiant words, as well as by her pertinacity in demanding the recognition of her rights and in vindicating them, she has exhibited evidence of the Anglo-Saxon blood that flows in her veins. While we may consider that the evidence, as to her words and conduct, does not tend to establish that female delicacy and timidity so much praised, yet it does show an energy and firmness in defense of her rights not altogether unworthy of admiration. But neither womanly delicacy nor unwomanly courage has any thing to do with her legal rights and the remedies for their deprivation. These are to be settled without regard to such personal traits of character.

The court gave the following instructions to the jury:

1. The defendant as a common carrier of passengers upon the Mississippi river had the power and legal right to make reasonable and proper rules and regulations for the conduct and accommodation of all persons who travel upon their boats.

2. The sale of a ticket to a passenger is a contract to carry him or her according to the reasonable regulations and usages of the company, and the passenger, by the purchase of the ticket, is presumed to contract with reference to them.

3. The right of passengers to a passage on board of a steamboat is not an unlimited right, but is subject to such reasonable rules and regulations as the proprietors may prescribe for the due accommodation of passengers and for the due arrangement of their business. They have the further right to consult and provide for their own interests in the management of their boats.

4. The duty of common carriers to carry passengers is imposed by law for the convenience of the community at large, and not of individuals, except so far as they are component

parts of the community, and common carriers are not required, for the accommodation of particular individuals, to incommode the community at large.

5. The defendant, as common carrier of passengers, had the legal right, as I have already said to you, to adopt *reasonable rules* and regulations concerning the convenience, comfort, and safety of its passengers, such, for example, as admitting to the ladies' cabin such gentlemen only as are accompanied by ladies, seating parties or families traveling together at the same table or adjacent to each other, the seating gentlemen unaccompanied by ladies in the gentlemen's cabin, and the like. These and other like reasonable rules and regulations may be adopted and enforced by the common carrier of passengers for hire.

But all persons, unobjectionable in character and deportment, who observe all reasonable rules and regulations of the common carrier, who pay or offer to pay first-class fare, are entitled, irrespective of race or color, to receive upon the boats of the common carrier first-class accommodations. If the plaintiff in this suit was unobjectionable in character and deportment, and, but for her color and blood, was entitled to first-class accommodations, and paid or offered to pay to the proper officers of the boat, the price charged for first-class accommodations, then I say to you, and so charge, that the plaintiff was entitled to the same rights and privileges, while upon said boat, that other passengers upon the same boat, similarly circumstanced, of purely Anglo-Saxon origin, were entitled to.

And if plaintiff's rights to first-class accommodations were denied her, simply because she has African or negro blood in her veins, and if she, for this reason only, was forcibly and violently removed from the table in the cabin of the boat, and forcibly ejected therefrom, after having paid or offered to pay the usual and fixed price for a meal at some one of the tables in the cabin of the boat, then the court charges you that the plaintiff is entitled to recover in this action.

6. If the plaintiff, upon entering the boat at the time in question, voluntarily and knowingly purchased a passage ticket

Coger v. The North West. Union Packet Co.

defining and limiting her rights as a passenger, then she was bound by the special contract upon said ticket to the extent there expressed. But if the contract upon this passage ticket simply related to transportation, and did not include meals, then plaintiff was entitled to the rights and privileges of other cabin passengers similarly situated and of like character and deportment, except so far as abridged and limited by the afore said ticket.

7. Taking for your guide what I have already said to you concerning the rights of the common carrier to adopt reasonable rules and regulations for the comfort and convenience of passengers, if you find that the plaintiff brought upon herself the injuries she complains of, because of the violation of reasonable and proper rules of the defendant, and if the officers of the boat, because of the violation of reasonable rules and regulations of the boat by the plaintiff, and not simply because of her color, removed the plaintiff from the table when seated, and used only reasonable and necessary force to remove her, then the defendant is not liable for damage in this action.

8. But the court charges you as a proposition of law, that the rule contended for by counsel for defendant in this suit, viz. : That all persons of African descent taking passage on board of defendant's boats shall, for this cause only, submit to the rule of the company requiring such persons to take their meals in the pantry or on the guards of the boat, is not a reasonable but an unreasonable rule, and must be disregarded by you in deciding this case under the evidence, and the law as announced to you by the court.

9. The words upon the passage ticket " at an assigned table " cannot be construed by you in this case as giving the right to the officers of the boat to set a table for the plaintiff in the pantry or on the guards of the boat ; and if she paid, or offered to pay, the usual first-class fare for a meal, she was entitled to eat it in the cabin of the boat, upon an equality with other first class passengers of like character and deportment, the red letters in the passage ticket notwithstanding.

The objections raised in the assignment of errors and exclusively relied upon in the argument of counsel relate to the instructions given and refused by the court. No other points are discussed and relied upon; our attention, therefore, will be confined to them.

II. It is not claimed that the doctrines pertaining to the duties and obligations of common carriers of passengers and the force and effect of contracts made by them for the transportation of persons and their right to make and enforce reasonable rules and regulations in the prosecution of their business, as announced in the very clearly expressed and direct instructions given to the jury, are unsound so far as they relate to white persons. Leaving out of view the color of a passenger and applying these doctrines in cases where no distinction of race exists, we do not understand that, in such a case, counsel would object to the rules of the court's charge. Had plaintiff been a lady of pure Caucasian blood, unobjectionable in deportment and character, and on account of some prejudice toward herself, her family, or the place of her residence, entertained by the officers of defendant and the passengers they were accustomed to carry, she had been subjected to the operation of rules established by defendant which excluded her from the table and cabin, and, for disobedience thereto, had been treated in the manner disclosed by the evidence in this case, we do not understand, and it would be unfair to suppose that counsel would maintain that the instructions applied to such a case would not be a true exposition of the law. As we regard the case, the sole question presented for our determination is this: Had the defendant, as a common carrier of passengers, the authority to establish and enforce regulations depriving an individual of color of the privileges and rights accorded to white persons traveling upon its steamers, and to enforce rules whereby the former were required to submit to treatment and accept accommodations different from those of the latter; or, more briefly and in a word, are the rights and privileges of persons transported by public carriers affected by race or color? This is the

simple question presented by the case. We understand that defendant's counsel squarely meet the issue, and avow that carriers do possess such authority, and that distinctions on account of race and color may be made by them in discharging their obligations toward their passengers.

III. Plaintiff's counsel insist that their client cannot be regarded as a colored person; that, as white blood predominates in her veins, she is, in law, to be regarded as belonging to the white race, and is not, therefore, subject to rules or restrictions that may be imposed upon negroes. We do not propose to pursue the inquiry to which we are thus directed by plaintiff's counsel, or to weigh the arguments and authorities adduced by them in support of their position. However pertinent to such a case the discussion may have been, not many years ago, in some States of the Union, in our opinion, the doctrines and authorities involved in the argument are obsolete, and have no longer existence and authority, anywhere within the jurisdiction of the federal constitution, and most certainly not in Iowa. The ground upon which we base this conclusion will be discovered, in the progress of this opinion, to be the absolute equality of all men. We will, in determining this case, accept the statement of fact as made by counsel of defendant, namely, that plaintiff is a woman of color.

IV. In our opinion the plaintiff was entitled to the same rights and privileges while upon defendant's boat, notwithstanding the negro blood, be it more or less, admitted to flow in her veins, which were possessed and exercised by white passengers.

These rights and privileges rest upon the equality of all before the law, the very foundation principle of our government. If the negro must submit to different treatment, to accommodations inferior to those given to the white man, when transported by public carriers, he is deprived of the benefits of this very principle of equality. His contract with a carrier would not secure him the same privileges and the same rights that a like contract, made with the same party by

his white fellow citizen, would bestow upon the latter. If he buys merchandise of the tradesman, or corn of the farmer, no principle of equality or justice will permit him to be supplied with an inferior article, or short weight or measure, because of his dark complexion. Why can it be claimed that his ticket for transportation upon a steamboat may assign him to a cot for sleep, or a place upon the guards for his dinner? It may be claimed that as he does not get accommodations equal to the white man he is not charged as great a price. But this does not modify the injustice and tyranny of the rule contended for. It amounts to a denial of equality. It says to the negro, you may have inferior accommodations at a reduced price, but no others. Who could defend the rule when carried to its legitimate end? Under it the colored man could be forbidden to buy merchandise or corn, except of an inferior quality, and the oppression and injustice would be justified on the ground that he is not charged the price of good articles of the same class. The absurdity and gross injustice of the rule — nay, its positive wickedness, as all other principles intended to inflict oppression and wrong, are readily exposed by tracing it to its natural consequences.

The doctrines of natural law and of christianity forbid that rights be denied on the ground of race or color; and this principle has become incorporated into the paramount law of the Union. It has been recognized by this court in a decision wherein it is held that the directors of a public school could not forbid a colored child to attend a school of white children simply on the ground of negro parentage, although the directors provided competent instruction for her at a school composed exclusively of colored children. *Clark* v. *The Board of Directors, etc.*, 24 Iowa, 267.

The decision is planted on the broad and just ground of the equality of all men before the law, which is not limited by color, nationality, religion or condition in life. This principle of equality is announced and secured by the very first words of our State constitution which relate to the rights of the people, in language most comprehensive, and incapable

of misconstruction, namely: "All men are, by nature, free and equal." Art. 1, § 1. Upon it we rest our conclusion in this case.

V. But the doctrine of equality and its application to the rights of the plaintiff, as presented in the record before us, depend, for support, not alone upon the constitution of this State and adjudications of this court. They are recognized and secured by the recent constitutional amendments and legislation of the United States.

The fourteenth amendment of the constitution of the United States is in these words:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny, to any person within its jurisdiction, the equal protection of its laws."

Attention is briefly demanded to the nature of the rights secured, and the character of the persons contemplated by this provision. The rights are: 1. Those of citizenship of the United States, and of the States. 2. Protection of privileges and immunities of citizens of the United States against abridgment by the States. The term *privileges* is comprehensive, and includes all rights pertaining to the person, as a citizen of the United States. For a discussion of the import of the word, see Mr. Justice MILLER's opinion, in the "Slaughter House cases," (7 Am. Law Review, 732), and the cases therein cited. 3. Security of life, liberty and property, and equal protection of State laws.

The persons contemplated by the amendment are: 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof. These are secured the right of citizenship of the United States, and protected against abridgment of their privileges and immunities. 2. All persons within the jurisdiction of the States. These are protected in

life, liberty and property, and secured the equal protection of the laws.

Plaintiff belongs to both classes of persons, to whom rights are secured and protection extended, by the amendment under consideration.

The act of congress of April 9, 1866 (the Civil Rights bill), provides, "That persons born in the United States, and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens of every race and color, without regard to any previous condition of slavery or involuntary servitude, except for punishment for crime, whereof the party shall have been duly convicted, shall have the same right in every State and Territory in the United States, to make and enforce contracts, to sue, be parties and give evidence, to inherit, purchase, lease, sell, and hold and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishments, pains and penalties, and to none other, any law, statute, ordinance, regulation or custom, to the contrary notwithstanding."

Under this statute, equality in rights is secured to the negro. The language is comprehensive and includes the right to property and all rights growing out of contracts. It includes within its broad terms every right arising in the affairs of life. The right of the passenger under the contract of transportation with the carrier is included therein. The colored man is guarantied equality and equal protection of the laws with his white neighbor. These are the rights secured to him as a citizen of the United States, without regard to his color, and constitute his privileges, which are secured by the constitutional amendment above considered. The peculiar privilege of the colored man intended to be guarantied by these constitutional and statutory provisions, is equality with the white man in all affairs of life, over which there may be legislation, or of which the courts may take cognizance. He is secured in life, liberty and property, and the remedies provided by law to enforce

the rights pertaining thereto.   As to all these, there cannot be laws imposing disabilities upon him, or depriving him of equal benefits, equal advantages and equal protection, with other citizens.   Other views of these statutory and constitutional provisions could be stated strengthening the conclusion that we have expressed.   But we deem it unnecessary further to discuss the subject, our minds resting with confidence upon the views we have announced.

VI.  It is insisted that the rights claimed by plaintiff, for the deprivation of which she prosecutes this suit, are social, and are not, therefore, secured by the constitution and statutes, either of the State or of the United States.   Without doubting that social rights and privileges are not within the protection of the laws and constitutional provisions in question, we are satisfied that the rights and privileges which were denied plaintiff are not within that class.   She was refused accommodations equal to those enjoyed by white passengers.   She offered to pay the fare required of those who had the best accommodations the boat afforded.   She was unobjectionable in deportment and character.   The advantages of the contract made with other passengers was denied her.   Her money would not purchase for her that which the same sum would entitle a white passenger to receive.   In these matters her rights of property were invaded, and her right to demand services to which she was lawfully entitled was denied.   She complains not because she was deprived of the society of white persons.   Certainly no one will claim that the passengers in the cabin of a steamboat are there in the character of members of what is called society.   Their companionship as travelers is not esteemed by any class of our people to create social relations.   Neither are these created by the seat at a common table.   Those of high pretensions in society — the good and virtuous, may mingle as passengers in the cabin, and sit at the same table with the lowly and vicious without a thought that the social barriers erected by the haughty assumptions of pride and wealth, or the just requirements of moral and good manners are broken down, and the high and low, good and bad,

are thus brought to a common level of conventional society. The plaintiff could not have attained any social standing by being permitted to share the treatment awarded to other passengers ; she claimed no social privilege, but substantial privileges pertaining to her property and the protection of her person. It cannot be doubted that she was excluded from the table and cabin, not because others would have been degraded and she elevated in society, but because of prejudice entertained against her race, growing out of its former condition of servitude — a prejudice, be it proclaimed to the honor of our people, that is fast giving way to nobler sentiments, and, it is hoped, will soon be entombed with its parent, slavery. The object of the amendments of the federal constitution and of the statutes above referred to, is to relieve citizens of the black race from the effects of this prejudice, to protect them in person and property from its spirit. *The Slaughter House Cases, supra.* We are disposed to construe these laws according to their very spirit and intent, so that equal rights and equal protection shall be secured to all regardless of color or nationality.

The instructions above quoted announce the doctrine of equality without regard to color ; that plaintiff could, by no regulation or custom of defendant's boats, be deprived of any right to accommodations to which she would be entitled under such customs, but for her color. In this they correctly state the law. Those asked by defendant expressed a different rule and were properly refused.

VII. Defendant's counsel insist that, under the contract expressed by the ticket for transportation purchased by plaintiff, she had no right to a seat at any other than an " assigned table," and that when she seated herself at the ladies' table in the cabin, it was in violation of this contract and she was therefore lawfully removed by the master of the boat. We will not stop to inquire whether a contract with a common carrier or others exercising public employments, exacted by them to enforce customs in derogation of the equality of the colored race or any other class of citizens, may be enforced

against those whose rights and privileges are intended to be thereby abridged.

We are well satisfied that a common carrier cannot refuse to transport all persons without distinctions based upon color or nationality, and that they cannot require contracts of the character indicated to be accepted of those demanding transportation. Whether such contracts, when knowingly and voluntarily made, are binding upon the party affected thereby, is not made a question in this case. By the sixth instruction the district court recognized their validity when entered into in the manner indicated.

But the court correctly considered, as appears by the ninth instruction, that the conditions of the ticket for transportation had no relation to plaintiff's right to a seat at the table, but pertained exclusively to transportation. Her dinner ticket gave her a right to dine in the cabin on an equality with other passengers.

This view disposes of objections made to the ninth instruction on the ground that it conflicts with the sixth, as well as certain points made by counsel supporting the right of the officers of the boat to remove plaintiff from the cabin, under the contract expressed in the transportation ticket.

VIII. It is urged that the plaintiff was rightfully removed from the table because she occupied a seat reserved for other passengers. The instructions given to the jury fairly announce the right of the officers of the boat to enforce reasonable rules. For disobedience thereto, and those reserving seats for ladies traveling without escort, or for other proper reasons, may be included in the number, it may be admitted she could have been properly removed from such reserved seats. But the instructions rightly hold she could not have been lawfully removed from the seat she occupied on account of her color. The cause of her removal was thus properly left to the jury, and there is no reason to doubt the correctness of the conclusion they reached upon this question of fact.

IX. It is also insisted that the treatment she received was justified by her bad language and improper behavior. The

law, as to the authority of defendant and its officers to enforce rules requiring proper deportment, is sufficiently stated in the instructions.   Whether her treatment resulted from the enforcement of such rules, or of others aimed at her exclusion on account of color, were questions for the jury, and were left to them by the instructions.   There is no just ground of complaint with their findings thereon.

X.  Certain instructions were asked by defendant and refused, to the effect that the dinner ticket having been procured by the plaintiff through deception, and without the knowledge of the officers of the boat, entitled her to no rights other than those given by the transportation ticket.   It does not appear that the rules and custom of the boat required. tickets to be purchased in person by the individuals using them, or that a ticket not thus obtained conferred no rights upon the party acquiring it.   Having obtained the ticket in a manner not forbidden by the regulations of the boat or by law, she was entitled thereby to all the rights which it would have conferred upon a white person if obtained in the same way.

The foregoing discussion disposes of all the objections made by defendant's counsel to the rulings of the district court.   In our opinion they are correct.   The judgment is therefore

Affirmed.