CITY OF KNOXVILLE

v.

Ronald G. BROWN.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

June 18, 2008 Session.

July 30, 2008.

Order Denying Petition to Rehear
Aug. 22, 2008.

Permission to Appeal Denied by
Supreme Court Feb. 17, 2009.

Ronald G. Brown, Oak Ridge, TN, pro se.

Ronald E. Mills, Deputy Law Director, Knoxville, TN, for the Appellee.

### OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Ronald G. Brown ("Defendant") is the registered owner of a vehicle which was photographed running a red light in Knoxville, Tennessee. The intersection where this occurred was one of the intersections monitored by Knoxville's red light camera enforcement program. Defendant was mailed a $50 citation for the violation. Defendant, proceeding pro se, challenged the validity of the Knoxville City Ordinance establishing the red light camera enforcement program. Defendant claimed that the ordinance was an ultra vires act of the City of Knoxville's police power. Defendant also claimed that the ordinance violated due process and equal protection of the laws. The Trial Court upheld the validity of the ordinance. We affirm.

### *Background*

This appeal involves a challenge to the validity of the City of Knoxville's red light camera enforcement system. The underlying facts in this case were stipulated below. That stipulation provides as follows:

1. That Defendant Ronald G. Brown was the registered owner of a Chevrolet motor vehicle bearing Tennessee license number 396 BBN on or about September 18, 2006.

2. That on or about September 18, 2006 at approximately 2:49 p.m. the Chevrolet motor vehicle bearing Tennessee license plate number 396 BBN was driven in a generally westerly direction on Kingston Pike across the stop bar for westbound traffic and into and through the intersection with Alcoa Highway while the traffic signal controlling westbound traffic was displaying an illuminated red light.

3. That at the time said Chevrolet motor vehicle crossed the stop bar for westbound traffic on Kingston Pike and proceeded into and through the intersection with Alcoa Highway its speed was approximately twenty-nine (29) miles per hour.

4. That the act of driving said motor vehicle in a generally westerly direction on Kingston Pike across the stop bar for westbound traffic and into and through the intersection with Alcoa Highway while the traffic signal controlling westbound traffic was displaying an illuminated red light violated Section 17–

506(a)(3)(a) of the Code of Ordinances of the City of Knoxville.

5. That ownership of a motor vehicle entering an intersection against an illuminated red light, in violation of Section 17–506(a)(3)(a), renders the registered owner responsible for the unlawful use of that automobile pursuant to Section 17–210 of the Code of Ordinances of the City of Knoxville, subject to certain exceptions noted in the ordinance.

6. That the attached Exhibit A is a true and exact copy of the citation issued to Defendant Ronald G. Brown alleging liability under Section 17–210 of the Code of Ordinances of the City of Knoxville.

7. That each of the photographic images attached as Exhibits B, C and D are true and accurate depictions of the Chevrolet motor vehicle bearing Tennessee license plate 396 BBN proceeding in a generally westerly direction on Kingston Pike at or near the intersection with Alcoa Highway on or about September 18, 2006 at approximately 2:49 p.m., and of the status of the traffic signal controlling that intersection.

8. That the video images contained in the disk attached as exhibit E are a true and accurate depiction of the Chevrolet motor vehicle bearing Tennessee license number 396 BBN proceeding in a generally westerly direction on Kingston Pike at or near the intersection with Alcoa Highway on or about September 18, 2006 at approximately 2:49 p.m., and of the status of the traffic signal controlling that intersection.

9. That the attached Exhibit F is a true and correct copy of Sections ...

17–210 and 17–506 of the Code of Ordinances of the City of Knoxville.

After receiving the citation, Defendant, proceeding pro se, filed a "Motion to Declare Knoxville City Code § 17–210(c) an Ultra Vires Act of Police Power." [1] Defendant argued, among other things, that City Code § 17–210(c) was an "ultra vires act of police power" because: (1) the ordinance violates procedural and substantive due process rights because it holds Defendant liable for the violation, regardless of who committed the act, unless Defendant identifies the actual driver; and (2) the ordinance violates equal protection because it affords a greater degree of protection to the guilty driver than the innocent vehicle owner.

Following a hearing on Defendant's motion, the Trial Court issued an order stating as follows:

This cause came to be heard on the 29th day of June, 2007 on the Motion of the Defendant to declare Knoxville City Code § 17–210(c) an *ultra vires* act of police power. Upon review of the memoranda submitted by the parties, and upon hearing the argument of the Defendant and counsel for the City of Knoxville, it is the opinion of this Court that the City of Knoxville possessed sufficient authority, through its general police powers and through authority granted by the General Assembly, to enact City Code § 17–210, authorizing the City of Knoxville's red light photo enforcement program and providing for liability of the registered owner of a vehicle for use of the vehicle in violation of the City Code. The Court therefore finds that Defendant's Motion is not well taken, in that City Code § 17–210 is a

---

1. The "Motion to Declare Knoxville City Code § 17–210(c) an Ultra Vires Act of Police Power" was filed in the Knox County Circuit Court, on appeal from a judgment of the Knoxville Municipal Court. Although the Municipal Court's judgment is not in the record, we can safely assume that Defendant was found to have violated the City Code.

valid exercise of the City of Knoxville's police power. . . .

After the Trial Court determined that Knoxville City Code § 17–210 was a valid exercise of police power, the Trial Court concluded in a separate order that "under the stipulated facts Defendant Ronald G. Brown is liable under Section 17–210 of the Code of Ordinances of the City of Knoxville." The Trial Court then imposed a $50 fine.

Defendant appeals and raises the following issue, which we quote: "Did the City of Knoxville possess the authority to enact Knoxville City Code § 17–210 as it was written?"

### *Discussion*

■ Defendant's various challenges to the validity of Knoxville City Code § 17–210 present questions of law. With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001).

The Municipal Court Reform Act of 2004, codified at Tenn.Code Ann. § 16–18–301, *et seq.*, sets forth the jurisdiction of municipal courts. In relevant part, the statute provides:

**16–18–302. Jurisdiction of municipal courts.**—(a) Notwithstanding any provision of law to the contrary:

(1) A municipal court possesses jurisdiction in and over cases:

(A) For violation of the laws and ordinances of the municipality; or

(B) Arising under the laws and ordinances of the municipality; and

(2) A municipal court also possesses jurisdiction to enforce any municipal law or ordinance that mirrors, substantially duplicates or incorporates by cross-reference the language of a state criminal statute, if and only if the state criminal statute mirrored, duplicated or cross-referenced is a Class C misdemeanor and the maximum penalty prescribed by municipal law or ordinance is a civil fine not in excess of fifty dollars ($50.00).

Tenn.Code Ann. § 16–18–302(a) (Supp. 2007).

Knoxville City Code § 17–210 provides, in relevant part, as follows:

(c) *Offense.*

(1) It shall be unlawful for a vehicle to cross the stop line at a system location per subsection 17–506(a)(3)(a), or for a vehicle to violate any other traffic regulation specified in chapter 17 (motor vehicles and traffic) of the Code of Ordinances of the city.

(2) A person who receives a citation under subsection (c) may:

a. Pay the civil penalty, in accordance with instructions on the citation, directly to the city court; or

b. Elect to contest the citation for the alleged violation.

(3) The owner of a vehicle shall be responsible for a violation under this section, except when he can provide evidence that the vehicle was in the care, custody, or control of another person at the time of the violation, as described in subsection (c)(4) of this section, in which circumstance the person who had the care, custody, and control of the vehicle at the time of the violation shall be responsible.

(4) Notwithstanding subsection (c)(3) of this section, the owner of the vehicle shall not be responsible for the violation if, on the designated court date, he furnishes the city court:

a. An affidavit by him stating the name and address of the person or entity who leased, rented, or otherwise had the care, custody, and control of the vehicle at the time of the violation; or

b. An affidavit by him stating that, at the time of the violation, the vehicle involved was stolen or was in the care, custody, or control of some person who did not have his permission to use the vehicle.

(d) *Penalty*

(1) Any violation of subsection (c) of this section shall subject the responsible person or entity to a civil penalty of $50, without assessment of court costs or fees. Failure to pay the civil penalty or appear in court to contest the citation on the designated date shall subject the responsible person or entity to assessment of court costs and fees as set forth in this chapter and chapter 8 of the Code of Ordinances. The city may establish procedures for the trial of civil violators, and the collection of civil penalties and may enforce the penalties by a civil action in the nature of a debt.

(2) A violation for which a civil penalty is imposed under this section shall not be considered a moving violation and may not be recorded by the police department or the state department of safety on the driving record of the owner of the vehicle and may not be considered in the provision of motor vehicle insurance coverage.

Tenn.Code Ann. § 55–8–110 (Supp.2007) addresses traffic control signals, including what is required when a motorist is at or approaching a red light. According to Tenn.Code Ann. § 55–8–110(a)(3)(A):

(3) Red alone or "Stop":

(A) Vehicular traffic facing the signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until green or "Go" is shown alone. A right turn on a red signal shall be permitted at all intersections within the state; provided, that the prospective turning car shall come to a full and complete stop before turning and that the turning car shall yield the right-of-way to pedestrians and cross traffic traveling in accordance with their traffic signal. However, such turn will not endanger other traffic lawfully using the intersection. A right turn on red shall be permitted at all intersections, except those that are clearly marked by a "No Turns On Red" sign, which may be erected by the responsible municipal or county governments at intersections which they decide require no right turns on red in the interest of traffic safety.... [2]

The General Assembly has specifically provided that municipalities may adopt various traffic regulations, including those set forth in Tenn.Code Ann. § 55–8–110. Tenn.Code Ann. § 55–10–307(a) (Supp. 2007) provides, in relevant part, as follows:

**55–10–307. Adoption of statutes and regulations by municipalities and exceptions.**—(a) Any incorporated municipality may by ordinance adopt, by reference, any of the appropriate provisions of §§ 55–8–101–55–8–180, 55–10–101–55–10–310, 55–50–301, 55–50–302, 55–50–304, 55–50–305, 55–50–311, 55–10–312, and 55–12–139, and may by ordinance provide additional regulations for the operation of vehicles within the mu-

**2.** For purposes of Tenn.Code Ann. § 16–18–302, *supra,* a violation of Tenn.Code Ann. § 55–8–110 is a Class C misdemeanor. *See* Tenn.Code Ann. § 55–8–109 (2004).

nicipality, which shall not be in conflict with the provisions of the listed sections....

Pursuant to Tenn.Code Ann. § 55–10–307(a), the City of Knoxville had adopted an ordinance regulating motorists approaching or at a red light. Knoxville City Code § 17–506(a)(3) provides as follows:

(3) Red alone or "Stop":

a. Vehicular traffic facing the signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection, and shall remain standing until green or "go" is shown alone; provided, however, that a right turn on a red signal shall be permitted at all intersections within the city provided that the prospective turning car comes to a full and complete stop before turning and that the turning car shall yield the right-of-way to pedestrians and cross traffic traveling in accordance with their traffic signal. However, such turn will not endanger other traffic lawfully using the intersection. A right turn on red shall be permitted at all intersections, except those that are clearly marked by a "no turns on red" sign, which may be erected by the city at intersections which the city decides require no right turns on red in the interest of traffic safety....

There is no doubt that Knoxville City Code § 17–506(a)(3) substantially mirrors Tenn.Code Ann. § 55–8–110(a)(3)(A) and the City of Knoxville had the authority to enact § 17–506(a)(3). The next question then becomes whether the City of Knoxville had authority to enact City Code § 17–210, which is one of the methods

utilized by the City to enforce § 17–506(a)(3).

In July of 2007, the General Assembly amended Tenn.Code Ann. § 55–8–110 by adding subsection (d). This subsection provided that: "A traffic citation that is based on evidence obtained from a surveillance camera that has been installed to enforce or monitor traffic violations shall be for a nonmoving traffic violation." Subsection (d) was in effect for only one year. Effective July of 2008, the General Assembly deleted subsection (d) and enacted Tenn.Code Ann. § 55–8–198. This new statute provides as follows:

55–8–198.—(a) A traffic citation that is based solely upon evidence obtained from a surveillance camera that has been installed to enforce or monitor traffic violations shall be considered a nonmoving traffic violation.

(b) An employee of the applicable law enforcement office shall review video evidence from a traffic light signal monitoring system and make a determination as to whether a violation has occurred. If a determination is made that a violation has occurred, a notice of violation or a citation shall be sent by first class mail to the registered owner of the vehicle that was captured by the traffic light signal monitoring system. A notice of violation or citation shall allow for payment of such traffic violation or citation within thirty (30) days of the mailing of such notice. No additional penalty or other costs shall be assessed for nonpayment of a traffic violation or citation that is based solely on evidence obtained from a surveillance camera installed to enforce or monitor traffic violations, unless a second notice is sent by first class mail to the registered owner of the motor vehicle and such second notice provides for an additional thirty (30) days for payment of such violation or citation.

(c) The following vehicles are exempt from receiving a notice of violation:

(1) Emergency vehicles with active emergency lights;

(2) Vehicles moving through the intersection to avoid or clear the way for a marked emergency vehicle;

(3) Vehicles under police escort; and

(4) Vehicles in a funeral procession.

(d)(1) Except as otherwise provided in this subsection, the registered owner of the motor vehicle shall be responsible for payment of any notice of violation or citation issued as the result of a traffic light monitoring system.

(2) An owner of a vehicle shall not be responsible for the violation if, on or before the designated court date, such owner furnishes the court an affidavit stating the name and address of the person or entity that leased, rented or otherwise had care, custody or control of the motor vehicle at the time of the violation.

(3) If a motor vehicle or its plates were stolen at the time of the alleged violation, the registered owner must provide an affidavit denying such owner was an operator and provide a certified copy of the police report reflecting such theft.

(4) An affidavit alleging theft of a motor vehicle or its plates must be provided by the registered owner of a vehicle receiving a notice of violation within thirty (30) days of the mailing date of the notice of violation.

Tenn.Code Ann. § 55–8–198 (2008).

Although not directly on point because Tenn.Code Ann. § 55–8–110(d) (repealed) and Tenn.Code Ann. § 55–8–198 (2008) became effective after Defendant received the citation, these statutes nevertheless are helpful. Knoxville City Code § 17–210 certainly is consistent with Tenn.Code Ann. § 55–8–198. Likewise, Tenn.Code Ann. § 55–8–198 indicates that red light enforcement cameras can be utilized by "applicable law enforcement office[s]." Municipalities are not exempted from this and would be included as law enforcement offices. Knoxville City Code § 17–210 also is consistent with Tenn.Code Ann. § 55–8–198. Even though Tenn.Code Ann. § 55–8–198 was not in existence when Knoxville City Code § 17–210 was enacted, Defendant has not provided this Court with anything to suggest that Knoxville City Code § 17–210 was in any way inconsistent or in conflict with any state statute, even before Tenn.Code Ann. §§ 55–8–110(d) (repealed) and 55–8–198 were passed. *See* Tenn. Code Ann. § 55–10–307(a) ("Any incorporated municipality may ... by ordinance provide additional regulations for the operation of vehicles within the municipality, which shall not be in conflict with the provisions of the listed sections....").

■ Defendant challenges Knoxville City Code § 17–210 by claiming that the ordinance imposes a criminal fine, as opposed to a civil fine. Defendant claims that because the fine is a criminal fine, City Code § 17–210 it is an ultra vires act.

As to whether the fine imposed by City Code § 17–210 is a criminal fine rendering the ordinance invalid, as suggested by Defendant, we turn to *City of Chattanooga v. Davis*, 54 S.W.3d 248 (Tenn.2001). One of the issues in *Davis* was "whether a monetary assessment imposed for the violation of a municipal ordinance is subject to the provisions of Article VI, section 14 of the Tennessee Constitution." [3] *Id.* at 257. In

---

**3.** Article VI, section 14 of the Tennessee Constitution, commonly referred to as the Fifty–Dollar Fines Clause, provides that:

No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

analyzing this issue, the Supreme Court explained that at the time the Tennessee Constitution was drafted, the term "fine" was "understood to mean 'a payment to a sovereign as punishment for some offense.'" *Id.* at 259 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). The Court went on to explain that Article VI, section 14 does not apply to fines greater than $50 that are not punitive in nature. *Id.*

An important aspect of the *Davis* opinion is the Court's explanation that a fine in a "civil" proceeding may implicate constitutional protections, depending on the nature of the fine. This is so regardless of whether the fine is formally called a "civil" fine by the legislation. According to *Davis:*

> Although the intended character of the proceeding may be relevant to the nature of a sanction imposed in that proceeding, the *O'Dell [v. City of Knoxville,* 54 Tenn.App. 59, 388 S.W.2d 150 (Tenn.Ct.App.1964) ] Court was plainly misguided to the extent that it believed a court could not impose a punitive sanction in a "civil action." As the United States Supreme Court has acknowledged, "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." *Austin v. United States,* 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (citations and quotations omitted). Moreover, *O'Dell's* rationale has been substantially, if not entirely, abrogated by our recognition that civil proceedings may impose sanctions that are "so punitive in form and effect" as to trigger constitutional protections. *See Stuart v. State Dept. of Safety,* 963 S.W.2d 28, 33

(Tenn.1998). Indeed, in the specific context of a "civil" proceeding for a municipal ordinance violation, this Court has held that the imposition of a pecuniary sanction triggers the protections of the double jeopardy clause to prevent a second "punishment" in the state courts for the same offense. *See Miles,* 524 S.W.2d at 660 ("We hold that the imposition of a *fine* is punishment." (emphasis in original)).

When examined in this light, it is clear that *O'Dell* does not represent an accurate statement of the law regarding application of the Fifty–Dollar Fines Clause. Therefore, to the extent that *O'Dell* compels the conclusion that proceedings involving municipal ordinance violations are outside the scope of Article VI, section 14, it is expressly overruled. Because Article VI, section 14 is concerned with the punitive purpose or effect of the sanctions imposed, the proper inquiry must be whether, despite the primary character of the proceeding, the purpose or effect of the monetary assessment is to further the goals of punishment. Accordingly, when analyzing issues touching upon the protections of Article VI, section 14, we will favor the substance of the sanction over its form, and we will not permit the language used to describe the particular sanction to govern the constitutional analysis. *See State v. Martin,* 940 S.W.2d 567, 570 (Tenn.1997). We also recognize that a "fine" within the meaning of Article VI, section 14 may be imposed in a proceeding that has been traditionally considered to be civil in nature, and although the nature of the proceeding in which the assessment is imposed may be relevant to some aspects of the inquiry, it cannot simply be the sole or determinative factor.

*Davis,* 54 S.W.3d at 261, 262.

The Court in *Davis* then adopted the following test to determine if a monetary

sanction imposed by a municipal ordinance was subject to the limitation of Article VI, section 14:

> [W]e hold that a monetary sanction imposed for a municipal ordinance violation falls within the scope of Article VI, section 14 when: (1) the legislative body creating the sanction primarily intended that the sanction punish the offender for the violation of an ordinance; or (2) despite evidence of remedial intent, the monetary sanction is shown by the "clearest proof" to be so punitive in its actual purpose or effect that it cannot legitimately be viewed as remedial in nature.

*Davis,* 54 S.W.3d at 264.

Because the fine in the present case was not more than $50, there is no issue as to whether Article VI, section 14 of the Tennessee Constitution is implicated. Thus, *Davis* is not directly on point. Having said that, we nevertheless believe *Davis* is instructive in resolving whether the $50 fine associated with Knoxville City Code § 17–210 is, as Defendant claims, a "criminal fine" which has been cloaked as a civil fine by the City of Knoxville. We conclude that the fine imposed by § 17–210 is a civil fine for purposes of establishing the Knoxville Municipal Court's jurisdiction pursuant to Tenn.Code Ann. § 16–18–302. We likewise conclude that the fine is a civil fine for procedural and appellate issues. However, we are unable to find any remedial purpose to the fine imposed by § 17–210. *See Town of Nolensville v. King,* 151 S.W.3d 427, 433 (Tenn.2004)("Primarily remedial sanctions, such as to cover the cost of clean-up, reimburse administrative costs, or to compensate for actual loss may all be imposed in greater amounts [than $50] pursuant to authority granted by statute."). The clear intent of the ordinance is to punish the registered owner of the vehicle and to deter similar conduct in the future. Presumably, the ordinance is intended to deter the registered owner from running a red light or loaning the vehicle to persons who run red lights. We, therefore, conclude that while the proceeding in the present case is "traditionally considered to be civil in nature," because the fine imposed is intended to be punitive and a deterrent, constitutional protections are triggered.

Even though constitutional protections are triggered by the fine imposed by City Code § 17–210, we nevertheless conclude that the proceeding is civil in nature and, in accordance with the statutes quoted above, well within the police power of the City of Knoxville. Therefore, we reject Defendant's argument that City Code § 17–210 is ultra vires and affirm the Trial Court's judgment on this issue.

■ We next address Defendant's argument that City Code § 17–210 violates Defendant's due process rights. Defendant argues that City Code § 17–210 essentially creates an impermissible rebuttable presumption of guilt against the owner of a vehicle, which can be rebutted by the owner setting forth who actually was in control of the vehicle at the time the vehicle was used to run a red light. We disagree with this characterization. What Defendant fails to acknowledge is that City Code § 17–210 makes the owner of the vehicle responsible for a red light violation, regardless of who was driving the vehicle. At all times the City has the burden of proving every element of its case. This is so regardless of who was driving the vehicle. The City Code merely permits the responsible vehicle owner to shift the responsibility for the violation to the actual driver of the vehicle in certain circumstances. This does not mean that the owner of the vehicle was not in violation of the City Code. Since the City at all times must establish the necessary elements of its

case by the requisite burden of proof, we reject Defendant's argument that City Code § 17–210 violates his due process rights.

■ Defendant likewise argues that City Code § 17–210 violates his fifth amendment privilege against self-incrimination. According to Defendant, the City Code requires him to violate his fifth amendment privilege by forcing him to establish that someone else was driving his vehicle. Again, this misses the point. City Code § 17–210 does not make the driver of the vehicle liable. Rather, it is the owner of the vehicle who is responsible for a red light violation, regardless of who actually was driving. The City must prove its case regardless of whether Defendant testifies or files an affidavit, etc. Simply because vehicle owners are permitted to shift liability by establishing someone else was in control of their vehicle at the time of the violation does not amount to a fifth amendment violation.[4]

■ Defendant's final argument is his claim that City Code § 17–210 violates equal protection because the City Code requires a citation be mailed to the vehicle owner instead of the "guilty party." Again, we emphasize that pursuant to the City Code, it is the vehicle owner who is responsible for the violation. Therefore, when a red light violation occurs, the "guilty party" is the vehicle owner, who may or may not be driving the vehicle at the time of the violation. We reject Defendant's claim that the mailing of a citation to the vehicle's registered owner violates equal protection.

After considering all of the various arguments raised by Defendant, we affirm the Trial Court's judgment sustaining the validity of Knoxville City Code § 17–210.[5] In light of our decision upholding Knoxville City Code § 17–210 and because Defendant does not claim there was insufficient proof to establish a violation of the City Code, we affirm the Trial Court's judgment in all respects.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant, Ronald G. Brown, and his surety, if any.

### ORDER ON PETITION TO REHEAR

The Appellant, Ronald G. Brown, has filed a Petition to Rehear pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure. The Appellant claims that this Court misstated a material fact established by the record. We find, contrary to the Appellant's insistence, that our Opinion does not misstate a material fact established by the record. Appellant's Petition to Rehear is DENIED. Costs related to

---

4. Because we conclude there is no fifth amendment violation, we need not decide whether the fifth amendment privilege is one of the constitutional provisions that are implicated by a civil penalty which has as its main purpose a deterrent or punishment effect.

5. *Idris v. City of Chicago*, No. 06 C 6085, 2008 WL 182248 (N.D.Ill.2008) involved virtually identical challenges to the City of Chicago's red light camera enforcement system. The ordinance at issue in *Idris* imposed a $90 fine on the owner of the vehicle. Unlike Knox-

ville's ordinance, the ordinance for Chicago did not allow the vehicle's owner to shift liability if the owner was able to prove he or she was not actually driving the vehicle. The only exception involved automobiles that were leased from a car dealership. The United States District Court for the Northern District of Illinois rejected claims that Chicago's ordinance violated substantive and procedural due process. The District Court also rejected the plaintiffs' claim that the ordinance violated equal protection.

this Petition to Rehear are assessed to the Appellant. Ronald G. Brown.