Edwin Corvan **GOOCH**, Appellant,

v.

**IOWA DEPARTMENT OF TRANSPORTATION,**
Appellee.

**No. 85–1500.**

Supreme Court of Iowa.

Jan. 14, 1987.

Rehearing Denied Feb. 13, 1987.

Lee P. Hook of McMurry & Hook Law Firm, Ankeny, for appellant.

Thomas J. Miller, Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ CARTER, and NEUMAN, JJ.

LARSON, Justice.

Edwin Corvan Gooch appeals from the district court's affirmance of the Department of Transportation's (DOT) refusal to renew his driver's license, based on its rule prohibiting issuance of a license to anyone who must wear bioptic telescopic lenses to meet the visual acuity standard required for a license. We affirm.

Gooch is superintendent of the Department of Parks and Recreation in Ankeny, a job which requires that he have an Iowa driver's license. He suffers from juvenile macular degeneration, called Stargardt's Disease, which reduces the central visual acuity of both eyes. As a result of this disease, a blind spot develops in the center

of each eye. Gooch's condition has now stabilized. His uncorrected vision in each eye is 20/300. His night vision is unimpaired, and there is little loss of peripheral vision as a result of the disease.

For several years, Gooch has been driving with the aid of vision corrective aids called "bioptic telescopic lenses." These lenses are attached at a specific height and angle to a normal pair of eyeglasses called the "carrier glasses." To look through these lenses and focus on upcoming objects, the head must be tilted slightly downward. With these lenses, his vision is between 20/40 and 20/50.

The DOT rule in question provides: "The department shall not license any person who must wear bioptic telescopic lenses to meet the visual acuity standards required for a license." 820 Iowa Admin.Code 13.-2(5). The rule provides for no exceptions; even though a driver's vision may be corrected with the use of the telescopic lenses, the license must be denied.

Upon being refused a license, Gooch requested a hearing, and the DOT affirmed the refusal. Formal review of that action was held, and the renewal was again refused. An application for rehearing was granted, and a hearing officer ruled that he did not have the power to rule on the validity of an administrative rule. This decision was appealed and affirmed, and a petition for judicial review was filed. The district court ruled in favor of the DOT.

At the administrative hearing, experts testified for both parties. Although much of each party's evidence was contradicted by the other, the evidence shows that bioptic lenses result in impairment of the wearer's visual field. This impairment, called ring scotoma, can be large enough to block out an entire city street. Also, as with a telescope, objects seen through these lenses appear to be closer than they really are. The use of these lenses also limits the ability of the driver to use the rearview mirror. Mr. Gooch's expert, Dr. Brilliant,

testified that other eye diseases cause more driving problems, and that, in his opinion, a person can competently operate a vehicle with these lenses.

On appeal, we consider four issues: (1) whether DOT rule 13.2(5) violates Iowa Code section 601D.3 (1985); (2) whether the DOT denied Gooch equal protection of the law; (3) whether rule 13.2(5) is in excess of the DOT's authority; and (4) whether the rule in question creates an unconstitutional, irrebuttable presumption.[1]

## I. *The Validity of the Rule Under Iowa Code § 601D.3.*

■ Gooch argues that rule 13.2(5) violates Iowa Code section 601D.3, which provides:

The blind, the partially blind and the physically disabled have the same right as the able bodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public elevators, public facilities and other public places.

Apparently, section 601D.3 has not previously been interpreted by this court. Both parties, therefore, analogize to the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982). That section provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

Gooch relies on *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). There, the Supreme Court defined an "otherwise qualified individual" as a person who must be able to meet the requirement of an activity, in spite of his or her handicap. *Id.* at 406, 99 S.Ct. at 2367, 60 L.Ed.2d at 988. Gooch argues that, in spite of his disease,

---

1. Gooch also argues that it was error for the hearing officer to refuse to pass on the validity of the rule. While we have some doubt about the basis of the hearing officer's reluctance, the issue is moot in this case because we must address the validity of the rule in any event.

bioptic telescopic lenses allow him to safely drive a vehicle, and as a result, DOT's action violates section 601D.3.

DOT focuses on the case of *Commonwealth Department of Transportation v. Liberati,* 80 Pa.Cmwlth. 519, 472 A.2d 741 (1984). That case involved a Pennsylvania regulation that disallowed bioptic telescopic lenses as permissive corrective devices to meet driving visual standards. The court in *Liberati* also analogized to the Federal Rehabilitation Act. It determined that, for a wearer to be "deemed 'otherwise qualified' to drive a vehicle, the vision-correcting device upon which [they rely] must be one that is compatible with driving safety." *Id.* at 744. The court concluded that evidence showed the lenses to be unsafe for driving and did not make the individual "otherwise qualified" to drive an automobile. *Id.* at 745.

The same analysis applies here. If a type of corrective lens could be discovered which would assist Gooch to safely operate a vehicle, then section 601D.3 may be applicable. As in *Liberati,* however, there is substantial evidence to support a finding that the lenses are unsafe for operating motor vehicles. Consequently, no violation of section 601D.3 exists.

## II. *Equal Protection.*

■ Gooch does not contend that visually impaired persons are a suspect class or that the privilege of driving is a fundamental right. As a result, rule 13.2(5) will pass constitutional scrutiny unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Beeler v. Van Cannon,* 376 N.W.2d 628, 629 (Iowa 1985).

The court in *Liberati* rejected a similar equal protection argument, saying:

> As we perceive the matter before us, the regulatory ban against telescopic lenses rests on a rational factual basis. And, since the regulation is clearly concerned with driving safety, the legitimate state interest promoted thereby is self-evident.

*Liberati,* 472 A.2d at 745.

Gooch's equal protection argument is also premised on the notion that rule 13.-2(5) irrationally distinguishes between people with different kinds of eye disease. We do not agree. The rule merely prohibits the use of bioptic telescopic lenses because of their own impairment of the driver's field of vision.

Further, even if the rule would distinguish between different forms of disease, a rule-making body "may adopt regulations that only partially ameliorate a perceived evil and they may defer complete elimination of the evil to future regulations when it does not impact on fundamental rights or suspect classifications." *City of Cedar Falls v. Flett,* 330 N.W.2d 251, 255 (Iowa 1983) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 305, 96 S.Ct. 2513, 2517–18, 49 L.Ed.2d 511, 518 (1976)).

We reject the equal protection argument.

## III. *The Ultra Vires Argument.*

■ DOT is authorized to adopt rules necessary "to transact its business and for the administration and exercise of its powers and duties." Iowa Code § 307.10(5) (1985). DOT acts consistently with this responsibility when it adopts a rule which fosters protection of the driving public. *Lenning v. Iowa Department of Transportation,* 368 N.W.2d 98, 101 (Iowa 1985). An ultra vires challenge to an administrative rule is addressed in this court under a "rational agency" standard. If a rational agency could conclude that the rule is within its delegated authority, the rule is valid. *Iowa-Illinois Gas & Electric Co. v. Iowa State Commerce Commission,* 334 N.W.2d 748, 751–52 (Iowa 1983).

The evidence in this case demonstrates that DOT could have rationally concluded that proscribing the use of bioptic telescopic lenses to pass the visual acuity standards promotes highway safety. As a result, rule 13.2(5) is not ultra vires, and the district court's resolution of this issue was correct.

## IV. *Irrebuttable Presumption.*

■ Gooch's final argument is that rule 13.2(5) creates an irrebuttable presumption,

violative of the due process clause of the state constitution. Because the due process clauses of the Iowa and federal constitutions are similar, this court often looks to federal cases when interpreting the state due process clause.

In *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir.1980), the court conducted an extensive examination of Supreme Court cases dealing with the irrebuttable presumption doctrine. The court emphasized the teaching of these cases; absent a suspect classification or infringement of a fundamental interest, articulation of a rational basis for the state action in question is sufficient to satisfy due process of law. *Id.* at 573–78.

The court in *Liberati* also faced the irrebuttable presumption argument. That court noted that

[i]n her other constitutional argument, Mrs. Liberati asserts that [the rule] created an "irrebuttable presumption" that a person cannot drive safely with telescopic lenses, and that the regulatory ban thus violates constitutional due process. Given what we have already said about the rational basis for the regulation, the due process challenge is without merit.

*Liberati*, 472 A.2d at 745 (citing *Malmed*, 621 F.2d 565).

Based on these standards and the rational basis justification already presented, rule 13.2(5) does not create an irrebuttable presumption. Therefore, this argument is also rejected.

We find no basis for reversal.

AFFIRMED.