# IN THE SUPREME COURT OF IOWA

No. 13–1502

Filed February 20, 2015

Amended June 30, 2015

**CITY OF SIOUX CITY,**

Appellee,

vs.

**MICHAEL JON JACOBSMA,**

Appellant.

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

The defendant seeks discretionary review of a district court ruling affirming a magistrate's order that found the defendant responsible for a citation issued to him for a speeding violation under an automated traffic enforcement ordinance. **AFFIRMED.**

Michael J. Jacobsma of Jacobsma & Clabaugh PLC, Sioux Center, pro se.

Justin R. Vondrak, Nicole Jensen-Harris, and Amber L. Hegarty, Assistant City Attorneys, for appellee.

**APPEL, Justice.**

In this case, the defendant challenges a citation issued to him for an alleged speeding violation under an automated traffic enforcement ordinance enacted by the City of Sioux City. The defendant sought dismissal of the citation on constitutional grounds, claiming enforcement of the ordinance violated the Due Process Clauses of the Iowa and Federal Constitutions, the inalienable rights clause of the Iowa Constitution, and the Iowa municipal home rule amendment that prohibits cities from enacting ordinances that conflict with state law. A magistrate refused to dismiss the charge and found the defendant responsible for the violation. The district court affirmed. The defendant filed an application for discretionary review, which we granted. We now affirm the decision of the district court.

## I. Background Facts and Proceedings.

**A. Sioux City's Automated Traffic Enforcement Ordinance.** In February of 2011, Sioux City enacted an automated traffic enforcement (ATE) ordinance. Sioux City, Iowa, Mun. Code § 10.12.080 (2011).[1] Section 1 of the ATE ordinance generally authorizes the Sioux City chief of police to deploy an automated traffic speed enforcement system to provide automated images of vehicles that fail to obey the speed limits on roadways within the city. *Id.* § 10.12.080(1). While the ATE ordinance provides that the automated system shall be operated by a private contractor, the police department receives the digital images and determines which "vehicle owners are in violation of the city's speed

---

[1]However, the Sioux City ordinance is entitled "Automated speed enforcement." For purposes of clarity and consistency, we will refer to this ordinance, as well as other like ordinances or statutes in this opinion, as "automated traffic enforcement" ordinances or systems.

enforcement ordinance and are to receive a notice of violation for the offense." *Id.* Section 2(b) of the ATE ordinance defines "vehicle owner" as "the person or entity identified by the Iowa Department of Transportation, or registered with any other state vehicle registration office, as the registered owner of a vehicle." *Id.* § 10.12.080(2)(b).

A violation of the ATE ordinance is defined in section 3. Under section 3(a), "[a] violation occurs when a vehicle traveling on a public roadway exceeds the applicable speed limit." *Id.* § 10.12.080(3)(a).

The ATE ordinance next considers who is liable for a violation. Under section 3(b), the "vehicle owner or nominated party shall be liable for a civil penalty" imposed by the ordinance. *Id.* § 10.12.080(3)(b). The ATE ordinance does not define or further elaborate on the term "nominated party," nor does it expressly provide a specific procedure for a vehicle owner to identify a nominated party. *See id.* § 10.12.080. Section 3(c) of the ATE ordinance further provides that a violation of the ordinance "may be rebutted by showing that a stolen vehicle report was made on the vehicle encompassing the period in question." *Id.* § 10.12.080(3)(c). The ATE ordinance does not expressly provide any other way to rebut a violation of the ordinance. *See id.* § 10.12.080.

Section 4 of the ATE ordinance establishes a civil penalty for violations and provides a right of appeal. *Id.* § 10.12.080(4). Under section 4(a), the civil penalty assessed is equivalent to the scheduled fine, including all surcharges and costs, established by Iowa Code section 321.285 for excessive speed over the posted speed limit. *Id.* § 10.12.080(4)(a). Sections 4(b) and (c) of the ATE ordinance provide an avenue of appeal. Under section 4(b), a recipient of an ATE citation "may dispute the citation by requesting a review by the chief of police or his designee." *Id.* § 10.12.080(4)(b). After such a review has been requested,

"[t]he chief of police or his designee shall act as [a] hearing officer." *Id.* § 10.12.080(4)(c). The hearing officer is then required to render a written decision within three business days of the hearing "as to whether the owner of the vehicle is guilty of an . . . infraction." *Id.* An appeal from the hearing officer's decision may be perfected by filing a written notice with the hearing officer. *Id.*

Under section 4(d) of the ATE ordinance, if an appeal of the hearing officer's decision is sought, a municipal infraction citation is issued by the police department. *Id.* § 10.12.080(4)(d). After the filing of an appeal request, a required court appearance and the scheduling of a trial before a judge or magistrate results. *Id.*

**B. Alleged Violation of the ATE Ordinance.** On August 6, 2012, a vehicle registered to Michael Jacobsma was detected by ATE equipment maintained by Sioux City traveling northbound on I-29 near Sioux City at a speed of sixty-seven miles per hour in a fifty-five miles-per-hour zone. As a result, Sioux City issued a citation to Jacobsma. The front page of the citation is entitled "Notice of Violation-Mobile Speed." On the front page, information is presented related to images recorded by the ATE equipment, including photos of the front and back of the vehicle involved in the alleged infraction. The alleged violator is further advised that video of the infraction is available for viewing on a webpage for sixty days from the date of the violation. The front page of the citation contains a note stating that as the registered owner of the vehicle described in the notice, the recipient is responsible for paying the civil penalty unless a timely hearing is requested.

The back page of the citation is entitled "Instruction Page" and presents additional information. It indicates that a recipient has three choices. First, the recipient could simply pay the civil penalty. Second,

the recipient could present an affidavit identifying another driver or indicating the vehicle had been sold or stolen. The instruction states that if the affidavit option is chosen, specific information including a copy of the transfer of sale or a copy of a police report of a stolen vehicle must be presented. If the recipient asserts that another person was driving, the notice states that "liability can only be transferred if the nominated driver accepts the responsibility." Finally, the recipient may request a hearing on the matter. If the hearing does not resolve the matter, the recipient is advised that an appeal may be taken to the district court.

**C. Appeal of the Alleged Violation.** Upon receiving the citation, Jacobsma chose to dispute the violation. After he was unsuccessful in the administrative review hearing under section 4(b) and 4(c) of the ATE ordinance, he elected to pursue an appeal. As a result, the City filed a civil municipal infraction citation with the Clerk of Court and the matter was placed on the small claims docket.

Jacobsma moved to dismiss the citation on three grounds. First, he claimed sections 3(b) and 3(c) of the ordinance were an unreasonable exercise of police power and therefore in violation of article I, section 1 of the Iowa Constitution. Second, Jacobsma asserted section 3(b) of the ordinance created an irrational and unfair presumption in violation of the Due Process Clauses of the United States and Iowa Constitutions. Third, he asserted sections 3(b) and 3(c) of the ordinance violated the limited home rule provision of article III, section 38A of the Iowa Constitution because they were impliedly preempted by various sections of Iowa Code chapter 321, which provide the laws of the road in Iowa.

The City filed a resistance. After a hearing and considering the briefs of the parties, the magistrate declined to dismiss the citation. The magistrate ruled that the ordinance "does not create strict liability" but

allows a nominated party to be liable in lieu of the registered owner. With respect to the preemption argument, the magistrate held that this court had previously upheld a similar ordinance in *City of Davenport v. Seymour*, 755 N.W.2d 533, 545 (Iowa 2008).

As a result of the ruling on the motion to dismiss, the matter proceeded to a hearing before the magistrate. Jacobsma stipulated that he was the registered owner of the vehicle photographed exceeding the speed limit and that the vehicle was traveling at sixty-seven miles per hour when it was photographed by the ATE system. The hearing consisted solely of the stipulations and the oral arguments of the parties. Based on these stipulations, the magistrate entered an order finding Jacobsma liable for the violation.

Jacobsma appealed the magistrate's ruling to district court. On appeal, Jacobsma reprised the three arguments raised in his motion to dismiss before the magistrate.

The district court rejected the arguments made by Jacobsma and affirmed the magistrate's ruling. In a detailed discussion, the district court concluded the ATE ordinance was not preempted by the provisions of Iowa Code chapter 321. The district court also rejected the due process arguments raised by Jacobsma, concluding the statute merely imposed vicarious liability through a rebuttable presumption that the registered owner committed the infraction.

In its original order, the district court did not rule upon Jacobsma's claim that sections 3(b) and 3(c) of the ordinance violated article I, section 1 of the Iowa Constitution. Jacobsma filed a timely motion under Iowa Rule of Civil Procedure 1.904(2) seeking expanded findings. In response, the district court expressly rejected Jacobsma's argument under article I, section 1 of the Iowa Constitution, concluding

that the ordinance is rationally related to the public welfare, is a reasonable regulation of traffic, and a valid exercise of the City's police power.

## II. Standard of Review.

"A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction and is thus reviewable for correction of errors at law." *Seymour*, 755 N.W.2d at 537. Constitutional claims are reviewed de novo. *See Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010).

## III. Substantive Due Process.

**A. Introduction.** The United States Supreme Court has identified two separate but related due process concepts. The first, generally referred to as substantive due process, prevents government from "interfer[ing] with rights 'implicit in the concept of ordered liberty.' " *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288, 292 (1937), *overruled in part on other grounds by Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062, 23 L. Ed. 2d 707, 715–16 (1969)). The second concept is procedural due process. *Id.* Procedural due process requires a government action impinging upon a protected interest to be implemented in a fair manner. *See id.*

With respect to substantive due process, the United States Supreme Court has developed a two-step analytical process. *See Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001). The first step is to identify the nature of the individual interest involved. *Id.* If the interest is found to be fundamental, strict scrutiny applies. *Id.*; *see also Reno v. Flores*, 507 U.S. 292, 301–02, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1, 16 (1993).

Alternatively, if the interest is not fundamental, the government action is subject to a rational basis test. *Santi*, 633 N.W.2d at 317. Under the rational basis test, the government must have a legitimate interest in the regulation and there must be a reasonable fit between the government interest and the means utilized to advance that interest. *Id.*

Jacobsma argues the Sioux City ordinance offends substantive due process under article I, section 9 of the Iowa Constitution and under the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has recognized that state courts may interpret parallel state constitutional provisions differently than federal courts. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461 n.6, 101 S. Ct. 715, 722 n.6, 66 L. Ed. 2d 659, 667 n.6 (1981) ("A state court may, of course, apply a more stringent standard of review as a matter of state law under the State's equivalent to the Equal Protection or Due Process Clauses."). Even though the Due Process Clauses are similarly phrased in both constitutions, we have stated that we are not bound by United States Supreme Court due process decisions, but look to them for "such light and guidance as they may afford." *Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d 583, 593 (Iowa 1971), *superseded on other grounds by statute*, Iowa Code § 17A.19(7) (1975), *as stated in Interstate Power Co. v. Iowa State Commerce Comm'n*, 463 N.W.2d 699, 702 (Iowa 1990); *see Putensen v. Hawkeye Bank of Clay Cnty.*, 564 N.W.2d 404, 408 (Iowa 1997) (same). Because the Due Process Clauses of the Iowa and Federal Constitutions are similar, we often look to federal cases when interpreting the state due process clause. *See Gooch v. Iowa Dep't of Transp.*, 398 N.W.2d 845, 848 (Iowa 1987).

Although Jacobsma cites both state and federal constitutional provisions, he does not assert that the standards for an Iowa

constitutional claim are different from those established under federal law. As a result, for the purposes of this case, we apply the federal standard related to substantive due process with respect to his claim under the Iowa Constitution, reserving the right to apply the standard in a fashion different from federal caselaw. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015); *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011); *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009); *Varnum v. Brien*, 763 N.W.2d 862, 878 n.6 (Iowa 2009); *Racing Ass'n of Cent. Iowa v. Fitzgerald (RACI)*, 675 N.W.2d 1, 7 (Iowa 2004).

Jacobsma's substantive due process claim is based upon his assertion that the Sioux City ordinance creates an arbitrary presumption that the vehicle's owner was the violator of the ordinance and the only way to rebut such a presumption is to show that the owner of the vehicle filed a stolen vehicle report. Jacobsma views this approach as fundamentally unfair and constitutionally deficient.

In support of his argument, Jacobsma cites *Hensler*, 790 N.W.2d at 569. In *Hensler*, we considered a substantive due process challenge to an ordinance that imposed a rebuttable presumption that a parent failed to exercise control over a minor child when that child engaged in "occurrences" that amounted to unlawful acts. *Id.* at 576, 578. We found the rebuttable presumption was arbitrary and irrational in light of the multiple factors that could cause juveniles to engage in behavior contrary to the ordinance. *Id.* at 587–88. Jacobsma argues that the presumption in the ATE ordinance is just as arbitrary or irrational. He argues the ordinance limits the ability of a vehicle owner to rebut liability only by showing a stolen vehicle report was made, which does not provide a fair opportunity to be heard and is a denial of due process.

The City responds by emphasizing that the ordinance imposes civil penalties. When civil penalties are imposed, the City argues a presumption satisfies due process if there is "a reasonable fit between the government interest and the means utilized to advance that interest." *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005) (internal quotation marks omitted). In support of its argument that the presumption in the ordinance satisfies due process, the City extensively cites *Agomo v. Fenty*, 916 A.2d 181 (D.C. 2007). In *Agomo*, the District of Columbia Court of Appeals upheld an ATE ordinance which provided that the registered owner was liable for any violation unless the vehicle was stolen or unless the vehicle owner provided the name, driver's license number, and address of the actual driver. *Id.* at 185–86, 194.

**B. Caselaw Related to Substantive Due Process Challenges to ATE Ordinances or Other Presumptions.**

1. *Caselaw related to presumptions in ATE ordinances.* We have not had an opportunity to consider a due process challenge to the validity of an ATE system on the ground that it employs impermissible presumptions. There have, however, been a number of due process challenges in other jurisdictions to ATE ordinances that employ presumptions.

A leading ATE case focusing primarily on due process under the Fifth Amendment of the United States Constitution is *Agomo*, 916 A.2d at 181. In *Agomo*, the District of Columbia court considered whether an ordinance that established a rebuttable presumption impermissibly shifted the burden of proof to the alleged violator in a fashion that offended federal due process. *Id.* at 193. Under the challenged ordinance, the owner of a vehicle was liable for moving violations generated by an ATE system "unless the owner . . . furnish[ed] evidence

that the vehicle was, at the time of the infraction, in the custody, care, or control of another person." *Id.* at 185 (internal quotation marks omitted).

The *Agomo* court first concluded as a matter of statutory interpretation that the ordinance imposed vicarious liability through the use of a rebuttable presumption. *Id.* at 192. According to the *Agomo* court, the system of imposing vicarious liability through the use of a rebuttable presumption did not affect a requirement in the D.C. Code that infractions be proved by clear and convincing evidence because the vicarious liability provisions simply established a mechanism for assessing liability once an infraction had been established. *Id.* at 192–93.

Moreover, the *Agomo* court emphasized that the presumption of innocence has no place in a civil proceeding. *Id.* at 193–94. Instead of applying the relatively strict requirements that might apply in a criminal setting, the *Agomo* court noted that the trial court ruled the basic procedural requirements of due process established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), were satisfied here, a claim the challengers waived on appeal. *Id.* at 191 & n.7.

The *Agomo* court then noted that when legislation provides that proof of one fact constitutes prima facie evidence of the main fact at issue, it is not a denial of due process so long as there is some rational connection between the fact proved and the ultimate fact presumed. *Id.* at 194. The *Agomo* court found that "[i]t is entirely rational to presume that a vehicle is in the care, custody, or control of its registered owner." *Id.* *Agomo* thus stands for the proposition that at least when an ATE system creates a rebuttable presumption that the owner is the driver of the vehicle, such a rebuttable presumption satisfied federal due process.

Because of its interpretation of the underlying statute, the *Agomo* court did not confront the validity of an ATE system that created an irrebuttable presumption that the registered owner of a vehicle was the violator.

A federal due process challenge to a Chicago ATE system was considered in *Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009). In *Idris*, a Chicago ordinance imposed vicarious liability on an owner of a motor vehicle for red light and illegal turn violations. *Id.* at 565.

With respect to substantive due process, the *Idris* court first noted that a traffic fine of $90 did not give rise to a fundamental interest. *Id.* at 566. As a result, the provision of the Chicago ordinance imposing vicarious liability on vehicle owners was subject only to a rational basis test under substantive due process. *Id.* Applying the rational basis test, the *Idris* court concluded that the ordinance passed constitutional muster. *Id.* The *Irdis* court stated that "[a] system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected [and that] these benefits can be achieved only if the owner is held responsible." *Id.* The *Idris* court observed that vicarious liability is rational because it encourages owners to "take more care when lending their cars, and often they can pass the expense on to the real wrongdoer." *Id.*

The *Idris* court considered the claim that because the only defense to vicarious liability expressly provided for in the ordinance related to theft of a vehicle, other defenses "have been wiped out." *Id.* at 567. The city contended that other defenses were in fact available notwithstanding the omission of express language in the ordinance allowing additional defenses to be raised. *Id.* The *Idris* court refused to address the claim on the merits, noting that "[n]one of the plaintiffs has offered such a defense

and had it rejected; federal courts do not issue advisory opinions on situations that do not affect the litigants." *Id.*

The take away point in *Idris* is that even if an ordinance imposes liability on registered owners without an opportunity to show that someone else was driving the vehicle at the time of the infraction, such an ordinance would satisfy substantive due process under the United States Constitution. *Idris* thus went beyond *Agomo*, which considered an ordinance with a rebuttable presumption.

Like *Agomo* and *Idris*, most state and federal cases have upheld challenges to automated traffic systems from a variety of due process attacks. *See, e.g., Fischetti v. Village of Schaumburg*, 967 N.E.2d 950, 959–60 (Ill. App. Ct. 2012) (holding civil statute imposing liability on owner without exception did not violate substantive due process); *Morales v. Parish of Jefferson*, 140 So. 3d 375, 395 (La. Ct. App. 2014) (holding civil ATE ordinance imposing strict liability on owner does not violate substantive due process under Federal Constitution); *Krieger v. City of Rochester*, 978 N.Y.S.2d 588, 600–04 (Sup. Ct. 2013) (emphasizing civil nature of statute in concluding vicarious liability provision consistent with substantive due process under *Idris* and *Agomo*); *City of Knoxville v. Brown*, 284 S.W.3d 330, 338–39 (Tenn. Ct. App. 2008) (holding civil ATE ordinance that makes owner of vehicle responsible regardless of who was driving does not violate substantive due process); *see also Gardner v. City of Cleveland*, 656 F. Supp. 2d 751, 760–61 (N.D. Ohio 2009) (citing *Idris* in rejecting substantive due process challenge to ordinance that imposes liability upon owner unless owner identifies driver who accepts liability); *Sevin v. Parish of Jefferson*, 621 F. Supp. 2d 373, 379–80, 383–84, 385–87 (E.D. La. 2009) (holding that if ordinance is criminal, it survives a due process challenge because the

presumption of liability is rebuttable and the plaintiff made no argument that the permissive presumption was unconstitutional as-applied).[2]

2. *Iowa caselaw regarding substantive due process challenges to presumptions.* We have not had occasion to consider a substantive due process challenge to an ATE ordinance. *See Seymour,* 755 N.W.2d at 544–45 (recognizing statutory and constitutional issues not presented on appeal, including due process challenges). We have recently, however, considered a federal substantive due process challenge to the validity of a presumption in a local ordinance in *Hensler,* 790 N.W.2d at 587. We have also considered the validity of a presumption that the owner of a vehicle committed a parking infraction under an ordinance imposing criminal penalties in *Iowa City v. Nolan,* 239 N.W.2d 102, 103–05 (Iowa 1976).

In *Hensler,* the City of Davenport enacted an ordinance that provided that after a second "occurrence" of an alleged delinquent act involving a child, a parent was presumed negligent in supervising the child and that the negligence caused the occurrence. 790 N.W.2d at 576. Under the Davenport ordinance, an occurrence was defined as arising when " 'a law enforcement agency has probable cause to believe a particular child engaged in a delinquent act and has filed a delinquency complaint with the court based upon such probable cause or has

---

[2]In *State v. Kuhlman,* 729 N.W.2d 577, 583 (Minn. 2007), the Minnesota Supreme Court concluded that a local ATE ordinance impermissibly shifted the burden of proof. The rationale in *Kuhlman,* however, was not based upon a due process attack but rather the theory that shifting the burden of proof in an ATE ordinance that imposed criminal penalties was in conflict with state law related to criminal violations. *Id.* at 583–84. The fact that the ordinance imposed criminal sanctions was a critical feature in creating the conflict with state law. *Id.*

otherwise taken said child into custody.' " *Id.* (quoting Davenport, Iowa, Mun. Code § 9.56.020(E) (2006)).

In *Hensler*, we concluded that "rather than finding negligence and causation based on facts," the Davenport ordinance was "arbitrary and irrational in light of the multiple factors that can cause [an] occurrence." *Id.* at 588 (internal quotation marks omitted). We surveyed at length the academic literature, noting that experts disagreed on the causes of juvenile delinquency with causes cited including biological and social factors, family dysfunction, poverty, and interrelated factors such as school, housing, employment, recreation, community life, and even the juvenile justice system itself. *Id.* at 588. Because of the complexity of both the negligence and causation prongs of the ordinance's presumption, we concluded the ordinance "was arbitrary and irrational" in light of the multiple factors that can cause an occurrence. *Id.*

In contrast to *Hensler*, we upheld a rebuttable presumption against a due process challenge in *Nolan*, 239 N.W.2d at 102. In *Nolan*, the registered owner of a motor vehicle challenged the constitutionality of three Iowa City parking ordinances which made the registered owner of a vehicle prima facie responsible for violation of the ordinances. *Id.* at 102–03. At trial, the owner stipulated the vehicle was registered to him and that it was illegally parked. *Id.* at 109 (McCormick, J., dissenting). Like this case, the owner offered no further evidence regarding the identity of the operator at the time of the infraction. *Id.* at 102 (majority opinion).

The *Nolan* court first noted that traffic regulations were public welfare offenses. *Id.* at 105. Under the public welfare doctrine, the city may impose "prima facie strict criminal responsibility" upon proving the existence of an illegally parked vehicle registered in the name of the

defendant and the inability to determine the actual operator. *Id.* The *Nolan* court stressed that this prima facie responsibility means "at first view" or "on its face" or "without more." *Id.* (internal quotation marks omitted).

Importantly, the *Nolan* court emphasized:

> The inference created by [the ordinance] does not deny due process to the defendant by placing the burden of proof upon him, but rather merely shifts to him the burden of going forward with evidence that the vehicle was not operated by one who the City has a right to presume was operating the automobile with its owner's consent.

*Id.* at 106.

Our approach in *Nolan* is not an outlier. Other parking enforcement cases have taken a similar approach. *See, e.g., City of Chicago v. Hertz Commercial Leasing Corp.*, 375 N.E.2d 1285, 1288, 1293–94 (Ill. 1978) (upholding ordinance which provided that the registered owner shall be prima facie responsible for parking violations); *City of Birmingham v. 48th Dist. Ct. Judge*, 255 N.W.2d 760, 762 (Mich. Ct. App. 1977) (same); *City of Kansas City v. Hertz Corp.*, 499 S.W.2d 449, 452–54 (Mo. 1973) (same).

**C. Analysis.** As indicated above, the first step in federal substantive due process analysis is consideration of the claimed protected interest. Here, Jacobsma claims that he has a liberty interest at stake. He claims his liberty interest is the "right to be free from being found civilly liable for an act or event without [the City] proving a causal connection . . . or, at least a special relationship between the defendant and the person committing the wrongful act."

The United States Supreme Court has stated that liberty interests for purposes of due process include "the rights to marry, to have children, to direct the education and upbringing of one's children, to

marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 138 L. Ed. 2d 772, 787 (1997) (citations omitted). A liberty interest also arises in the context of the right to worship, the right to contract, and the right to engage in the common occupations of life. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 2706–07, 33 L. Ed. 2d 548, 558 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042, 1045 (1923). As is apparent from the preceding authorities, a threat of incarceration presents a type of liberty interest but is not a necessary element of it. *See Glucksberg*, 521 U.S. at 719, 117 S. Ct. at 2267, 138 L. Ed. 2d at 787.

Jacobsma does not appear to have a conventional liberty interest. He can drive his car anywhere he wants, subject to the laws of the road. He can loan his car to anyone he wants. His right to self-fulfillment or his right to be left alone do not seem implicated by the Sioux City ATE ordinance in any meaningful sense.

Jacobsma is, however, certainly subject to being fined for traffic violations under Sioux City's ATE system. While Jacobsma may not have a liberty interest, he certainly has a property interest in not being subject to irrational monetary fines rather than a liberty interest impairing some right of self-fulfillment. *See Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 709 (M.D.N.C. 2003) (concluding a $50 fine resulting from an ATE system constitutes a legitimate property interest for purposes of due process); *Daily v. City of Sioux Falls*, 802 N.W.2d 905, 911 & n.7 (S.D. 2011) (noting "[n]umerous courts have recognized that the assessment of a civil fine deprives an individual of a protected property interest"); Matthew S. Maisel, *Slave to the Traffic Light: A Road Map to Red Light Camera Legal Issues*, 10 Rutgers J. L. & Pub. Pol'y 401, 416 (2013)

[hereinafter Maisel] ("The payment or threatened imposition of a monetary penalty under a red light camera ordinance or statute is a property interest protected by the Due Process Clause.").

We do not believe we should decline to consider Jacobsma's challenge merely because he may have used the wrong label. Moreover, in its brief, the City does not challenge the existence of a protectable due process interest. As a result, we assume for the purposes of this case that a protected interest is present.

While the parties agree that a protected interest is present, Jacobsma makes no claim that his interest, however characterized, is "fundamental," thereby triggering strict scrutiny under conventional federal due process analysis. *See Glucksberg,* 521 U.S. at 720, 117 S. Ct. at 2267, 138 L. Ed. 2d at 787 (noting the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests"). As a result, the parties agree that the appropriate test of the statute under due process is the rational basis test. *See id.* at 767 n.9, 117 S. Ct. at 2283 n.9, 138 L. Ed. 2d at 817 n.9.

Before we address the merits of Jacobsma's due-process rational basis challenge to the ordinance, we must first examine the nature of the factual record before the magistrate to determine the precise contours of the fighting issue raised in this case. The parties stipulated Jacobsma was the registered owner of the vehicle and that the vehicle was speeding when photographed by the ATE system. Jacobsma offered no evidence beyond the stipulations at trial. Specifically, he offered no evidence tending to show that he was not the driver of the vehicle at the time of the alleged violation. He did not deny he was the driver. He simply

asserted that the City's case failed because of what he claimed was an invalid presumption.

Given the factual posture of this case, the sole due process issue before the magistrate, the district court, and before us on appeal is whether due process under the United States or Iowa Constitutions is offended by the irrational or unreasonable imposition of liability on Jacobsma when (1) the evidence established that he was the owner of the vehicle, (2) the evidence established that the vehicle was speeding at the time of the alleged infraction, and (3) no evidence or offer of proof was made tending to show that Jacobsma was not driving the vehicle when the violation occurred. In other words, the issue actually joined in this case is whether an ATE ordinance, consistent with concepts of due process, may rationally impose liability on a defendant when the defendant concedes he is the registered owner of a vehicle, that he owns the vehicle involved in the infraction, and he offers no evidence that he was not driving the vehicle when the infraction occurred.

We think the issue must be so narrowed because Jacobsma must show under the facts that he has suffered a concrete injury because of an alleged constitutional defect. In *State v. Robinson*, 618 N.W.2d 306, 311 n.1 (Iowa 2000), we noted that "[i]f a statute is constitutional as applied to a defendant, the defendant cannot make a facial challenge unless a recognized exception to the standing requirement applies." Jacobsma has not claimed such exception. In this case, had Jacobsma offered evidence that he was not driving the vehicle, the magistrate may well have interpreted the statute to allow such evidence in order to meet constitutional concerns. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 73, 88 (Iowa 2010) (noting "[o]rdinarily, we construe statutes to avoid potential constitutional infirmity if we may reasonably do so").

But because Jacobsma offered no evidence beyond the stipulations that he was the owner of the vehicle and that the vehicle was involved in an infraction, the questions of whether and how a defendant may rebut a city's case and whether the ordinance comports with due process when faced with evidence that someone other than the registered owner was operating the vehicle at the time of the infraction, pose purely academic questions that are not before the court.

Both of the leading ATE cases refused to consider such academic issues. In *Agomo,* the court declined to consider the situation of a "truthful alibi" when a defendant does not know who was driving the vehicle but demonstrates that it was not him or her, when the issue was not properly raised in the case. 916 A.2d at 194 n.10. Similarly, in *Idris*, the Court of Appeals for the Seventh Circuit held it would not issue an advisory opinion on whether the ordinance eliminates all defenses when the party did not offer a defense that was rejected below. 552 F.3d at 567. We follow the approach of *Agomo* and *Idris.*

Thus the only question properly raised in this case, based upon the record developed below, is whether the stipulation offered by the parties provides a sufficient basis to impose liability upon Jacobsma without the introduction of evidence that he was not the operator. We think the answer to this question is yes under *Nolan.* Indeed, the case is even stronger here, when only civil penalties are involved, rather than in *Nolan,* in which the challenged ordinance imposed criminal penalties. *See* 239 N.W.2d at 103.

We do not think our due process holding in *Hensler* is controlling. In *Hensler,* the alleged connection between a parent's supervision and the subsequent commission of juvenile acts was simply too attenuated to meet a rational basis test. 790 N.W.2d at 587–89. The inferences under

the ordinance in *Hensler*—that a parent was negligent and that such negligence caused the juvenile behavior—involved a double-barreled blast of complex factual issues that, when combined, dramatically reduced the relationship between the established fact of a parent–child relationship and the presumed result of delinquency. *See id.* The presumption was simply unfair to parents and had little justification.

In contrast, the presumption in this case that, absent proof to the contrary, the registered owner was the driver of the vehicle at the time of the infraction is not very complicated and is eminently reasonable. It is quite rational to employ a *Nolan*-type inference that a registered owner who offers no evidence that he was not driving the vehicle at the time of the infraction was, in fact, the operator. *See, e.g., Mendenhall v. City of Akron*, 374 Fed. App'x 598, 600 (6th Cir. 2010) (holding vehicle owners strictly liable for the violation and only permitting them to shift responsibility to the actual driver in certain circumstances does not violate due process); *Brown*, 284 S.W.3d at 338–39 (holding city ordinance regarding red light camera program did not violate due process rights of owner of motor vehicle photographed running red light by creating an impermissible rebuttable presumption that owner was guilty, as the ordinance made the owner of a vehicle responsible for a red light violation regardless of who was driving and ordinance only permitted an owner to shift the responsibility for a red light violation to the actual driver in certain circumstances); Maisel, 10 Rutgers J. L. & Pub. Pol'y at 416 (noting "[c]hallenges to red light cameras under federal law have been fruitless so far"); Paul McNaughton, Comment, *Photo Enforcement Programs: Are They Permissible Under the United States Constitution?*, 43 J. Marshall L. Rev. 463, 470 (2010) (noting "challenges [to ATE ordinances/systems] under both state and federal [due process and

equal protection] laws have been wholly unsuccessful"). Based on these authorities and our own application of applicable law, we conclude that under the facts of this case, Jacobsma has failed to show that the presumption is sufficiently arbitrary and unreasonable to give rise to a federal due process violation.

We briefly turn to the Iowa Constitution. In recent years, there has been a movement among some academics to tighten rational basis review to avoid what is seen by some as extreme results. *See* Jeffrey D. Jackson, *Putting Rationality Back into the Rational Basis Test: Saving Substantive Due Process and Redeeming the Promise of the Ninth Amendment*, 45 U. Rich. L. Rev. 491, 530 (2011) (noting that for lower federal and state courts "the extreme deference created by the rational basis test, combined with the extreme strictness of the strict scrutiny test, almost guarantees that their decision will be skewed against the claimant"); Steven Menashi & Douglas H. Ginsburg, *Rational Basis with Economic Bite*, 8 N.Y.U. J.L. & Liberty 1055, 1060 (2014) (noting that "[e]xcept in the most extreme instance, the over- or under-inclusiveness of a statute or regulation—which is fatal when a fundamental right is constrained—does not mean it lacks a rational basis").

In this case, however, we have not been asked to develop a substantive standard under the Iowa due process clause different than the applicable federal standard. Although we could apply the rational basis standard more stringently than, say, the extraordinarily deferential version of the rational basis test applied in *Williamson v. Lee Optical of Oklahoma, Inc.,* we would not reach a different result under the Iowa Constitution, particularly in light of the narrow issue presented. *See* 348

U.S. 483, 488, 75 S. Ct. 461, 464, 99 L. Ed. 563, 572 (1955)[3] (The Court applied a highly deferential standard and stated "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."). Even if we were to employ a more rigorous rational basis review, we think it is permissible under the Iowa due process clause for an ATE ordinance to allow a city to make a prima facie case of liability based upon vehicle ownership and photographic evidence that the vehicle was involved in a violation of the ordinance. The asserted governmental interest in public safety is certainly " 'realistically conceivable' " with "a basis in fact." *See RACI*, 675 N.W.2d at 4 (quoting *Miller v. Boone Cnty. Hosp.*, 394 N.W.2d 776, 779 (Iowa 1986)). Jacobsma has developed no record suggesting that the asserted City interest is insubstantial or empirically unsustainable. As presented in this case, this means the chosen methods used by the City to advance the public interest in safety, clearly reasonably fit the City's legitimate objective in public safety. *Cf. Idris*, 552 F.3d at 566; *Agomo*, 916 A.2d at 193. We therefore conclude there is no due process violation under article I, section 9 of the Iowa Constitution even if we apply a somewhat more stringent rational basis review than generally is employed by the federal precedents. We reserve

---

[3]The United States Supreme Court has historically employed a number of different formulations of the rational-basis due process test. *See, e.g., County of Porage v. Steinpreis*, 312 N.W.2d 731, 740 n.4 (Wis. 1981) (Abrahamson, J., dissenting) (citing several cases which note various formulations for the rational basis test used by the United States Supreme Court). In some due process and equal protection cases, the Supreme Court seems to employ a rational basis test with greater bite than that afforded in *Williamson*. *See, e.g., Romer v. Evans*, 517 U.S. 620, 634–35, 116 S. Ct. 1620, 1628–29, 134 L. Ed. 2d 855, 867–68 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448–50, 105 S. Ct. 3249, 3258–60, 87 L. Ed. 2d 313, 325–27 (1985); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534, 93 S. Ct. 2821, 2826, 37 L. Ed. 2d 782, 788 (1973).

for another day the question of whether an ordinance that strictly imposes vicarious liability in all circumstances offends the due process clause of the Iowa Constitution.

## IV. Inalienable Rights Clause of the Iowa Constitution.

**A. Introduction.** Article I, section 1 of the Iowa Constitution, sometimes referred to as the "inalienable rights" clause, provides:

> All men and women are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

Iowa Const. art. I, § 1.

As is apparent, the language in the inalienable rights clause is largely derived from Virginia's Declaration of Rights drafted by George Mason and largely incorporated by Thomas Jefferson in the Declaration of Independence. *See* Virginia Declaration of Rights (1776), *available at* http://www.archives.gov/exhibits/charters/virginia_declaration_of_right s.html; Joseph R. Grodin, *Rediscovering the State Constitutional Right to Happiness and Safety*, 25 Hastings Const. L.Q. 1, 5–19 (1997) [hereinafter Grodin].

Notably, such language was omitted from the United States Constitution, no doubt in order to avoid controversy with the slave states over the meaning of the ringing phrase "All men are created equal." *See* Robert J. Reinstein, *Completing the Constitution: The Declaration of Independence, Bill of Rights and Fourteenth Amendment*, 66 Temple L. Rev. 361, 362–63, 370–74 (1993). The absence of language styled after Virginia's Declaration of Rights and the Declaration of Independence in the United States Constitution has been noted by Justice Scalia, who stated that "there is no such philosophizing in our [the Federal]

Constitution." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 134 (1997). But such language is expressly found in the Iowa Constitution. The question is: what does it mean?

There is no single simple answer. Like the Fifth Amendment to the United States Constitution, the inalienable rights clause of article I, section 1 has a number of distinct provisions. It provides that all men and women are by nature "free and equal." Iowa Const. art. I, § 1. It further describes three distinct classes of "inalienable rights," namely, (1) the right of "enjoying and defending life and liberty," (2) the right of "acquiring, possessing and protecting property," and (3) the right of "pursuing and obtaining safety and happiness." *Id.* Thus, article I, section 1 does not present a single interpretive problem, but instead a series of interpretive problems.

In pressing his argument that the presumption in the Sioux City ordinance violates the inalienable rights clause of the Iowa Constitution, Jacobsma relies on *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 175–79 (Iowa 2004), a case which considered the application of the "acquiring, possessing[,] and protecting property" provision of the inalienable rights clause. He notes that in *Gacke*, we declared that the inalienable rights clause " 'is not a mere glittering generality without substance or meaning.' " *Id.* at 176 (quoting *State v. Osborne*, 171 Iowa 678, 693, 154 N.W. 294, 300 (1915)). In *Gacke*, the plaintiffs relied upon a 1950 case, which stated that the inalienable rights clause "was intended to secure citizens' pre-existing common law rights (sometimes known as 'natural rights') from unwarranted government restrictions." *Id.* (citing *May's Drug Stores v. State Tax Comm'n*, 242 Iowa 319, 328–29, 45 N.W.2d 245, 250 (1950)).

Jacobsma asserts he has a "liberty interest" in being free from civil liability for an act or event when there is no proof of a causal connection between the defendant or the act or event or, in the alternative, a special relationship between the defendant and the person committing the wrongful act. While conceding the ordinance makes reference to a "nominated party," Jacobsma notes the ordinance does not provide a definition of a nominated party. Further, Jacobsma argues that because the ordinance states "the vehicle owner or nominated party shall be liable," Sioux City, Iowa, Mun. Code § 10.12.080(3)(b), it is not clear the nominated party is liable "in lieu of" the vehicle owner. While conceding that vicarious liability for acts of another based upon a special relationship predates our state's constitution, such vicarious liability was based only on a principal–agent relationship. Jacobsma concludes that the presumption does not require evidence of a causal connection to the wrongful act by the vehicle owner, which amounts to an unreasonable exercise of police power in violation of article I, section 1 of the Iowa Constitution.

The City responds by agreeing that article I, section 1 is not "a mere glittering generality without substance and meaning," but notes that any right under the constitutional provision is "subject, of course, . . . to such reasonable regulations as the peace, comfort and welfare of society may demand." *Gibb v. Hansen*, 286 N.W.2d 180, 186 (Iowa 1979) (internal quotation marks omitted); *see also Benschoter v. Hakes*, 232 Iowa 1354, 1362, 8 N.W.2d 481, 486 (1943). Citing *Agomo*, the City maintains that even if a liberty interest is involved in this case, the presumption found in the Sioux City ordinance is a reasonable regulation that withstands Jacobsma's article I, section 1 challenge.

**B. Caselaw in Other States on State Constitutional Inalienable Rights Clauses.** Language similar to article I, section 1 appears in the state constitutions of California, Colorado, Nevada, New Jersey, New Mexico, North Dakota, Ohio, and Vermont. *See* Cal. Const. art. I, § 1; Colo. Const. art. II, § 3; Nev. Const. art. I, § 1; N.J. Const. art. I, § 1; N.M. Const. art. II, § 4; N.D. Const. art. I, § 1; Ohio Const. art. I, § 1; Vt. Const. ch. I, art. 1. A number of other state constitutions have variations on the inalienable rights language. *See* Grodin, 25 Hastings Const. L.Q. at 3–4.

Some states with inalienable rights clauses similar to Iowa's have found them to be merely hortatory. *See Sepe v. Daneker*, 68 A.2d 101, 105 (R.I. 1949) (The court declared that the clause was "addressed . . . to the general assembly by way of advice and direction, [rather] than to the courts, by way of enforcing restraint upon the law-making power." (Internal quotation marks omitted.)); G. Alan Tarr, *Understanding State Constitutions* 76 (1998) (characterizing inalienable rights clauses as "statements of political principle not susceptible to judicial enforcement"); *see also* Thomas B. McAffee, *Restoring the Lost World of Classical Legal Thought: The Presumption in Favor of Liberty Over Law and the Court Over the Constitution*, 75 U. Cin. L. Rev. 1499, 1504 n.18 (2007) (characterizing inalienable rights clauses as the original "inkblot" amendments). One scholar has suggested the more nuanced view that some provisions of inalienable rights clauses such as the right to defend life and property may be judicially enforceable while the provisions related to the pursuit of happiness and safety are not. Eugene Volokh, *State Constitutional Rights of Self-Defense and Defense of Property*, 11 Tex. Rev. L. & Pol. 399, 412–13 (2007). Some courts, however, have held that inalienable rights clauses in state constitutions are judicially

enforceable in a variety of contexts. *See, e.g., Commonwealth v. Wasson,* 842 S.W.2d 487, 501–02 (Ky. 1992) (holding inalienable rights provision protected private sexual conduct); *Commonwealth v. Masden,* 175 S.W.2d 1004, 1008 (Ky. Ct. App. 1943) (enforcing inalienable rights provision to allow property owner to kill wild animals damaging or threatening to damage property); *Commonwealth v. Campbell,* 117 S.W. 383, 387 (Ky. Ct. App. 1909) (holding right to use liquor for one's own comfort, with no injury to other citizens, is within the inalienable rights clause); *Planned Parenthood of Middle Tenn. v. Sunquist,* 38 S.W.3d 1, 13, 25 (Tenn. 2000) (striking down abortion restrictions on state constitutional grounds relying in part on inalienable rights provision of Tennessee Constitution). *But see Clinic for Women, Inc. v. Brizzi,* 837 N.E.2d 973, 975 (Ind. 2005) (sustaining eighteen-hour waiting period and counseling requirement from attack under inalienable rights clause of Indiana Constitution).

On the specific question posed in this case, however, the parties have not cited, and we have not found, any authority from other jurisdictions on the question of whether the inalienable rights clause of a state constitution prevents the enforcement of presumptions in an ATE ordinance similar to that presented in this case. In general, however, the cases hold that liberty or property rights enumerated in the inalienable rights clauses of state constitutions are subject to reasonable regulations in the public interest. *See, e.g., Concerned Dog Owners of Cal. v. City of Los Angeles,* 123 Cal. Rptr. 3d 774, 789 (Ct. App. 2011) (holding ownership of domestic animals is subject to reasonable government regulation); *Ikuta v. Ikuta,* 218 P.2d 854, 855–56 (Cal. Ct. App. 1950) (noting "[t]he rights to enjoy liberty, to acquire, possess and protect property, which are secured to the individual by [article I,] section 1 [of the California Constitution], are not absolute but are 'circumscribed by

the requirements of the public good' " and further,"[l]ike the protection accorded to personal rights and privileges by the requirement of due process of law, the guarantees of [article I,] section 1 cannot operate as a curtailment upon the basic power of the legislature to enact reasonable police regulations" (quoting *In re Moffett*, 64 P.2d 1190, 1194 (Cal. Ct. App. 1937)); *State v. Cromwell*, 9 N.W.2d 914, 920–21 (N.D. 1943) (holding right to engage in business subject to reasonable regulation).

**C. Iowa Approach to Inalienable Rights Clause.** We have considered the meaning of the inalienable rights clause in a number of cases. We have not, however, engaged in any substantial analysis of the historical or philosophical origins of the clause, its function and purpose as the first section of the Bill of Rights in the Iowa Constitution, or the meaning of its generous text in contrast to the rights language in the Federal Constitution. *See* Bruce Kempkes, *The Natural Rights Clause of the Iowa Constitution: When the Law Sits Too Tight*, 42 Drake L. Rev. 593, 632 (Iowa 1993) [hereinafter Kempkes] (noting that our cases have done "virtually nothing" in charting the ebbs and flows of the provision and that no case examines the text or reasons for inclusion). Our cases tend to be fragmentary and incremental.

We have, however, stated two general principles. We have noted that because the inalienable rights clause appears at the very threshold of the Iowa Bill of Rights, the "constitutional safeguard is thereby emphasized, and shown to be paramount." *Hoover v. Iowa St. Highway Comm'n*, 207 Iowa 56, 58, 222 N.W. 438, 439 (1928). We have also declared the inalienable rights clause "is not a mere glittering generality without substance and meaning." *Osborne*, 171 Iowa at 693, 154 N.W. at 300. These principles, however, tell us little about the substance of

the constitutional guarantees or how they should be applied in a given case.

It is clear, however, that article I, section 1 has at least some constitutional bite. The first article I, section 1 case is *Coger v. Northwest Union Packet Co.*, 37 Iowa 145 (1873). In that case, we rested our conclusion, that an African American was entitled to "the same rights and privileges" in riverboat transportation, upon the "free and equal" language of the inalienable rights clause. *Id.* at 153–55. Since *Coger*, we have enforced article I, section 1 in a number of varied contexts. For instance, in *State v. Ward*, 170 Iowa 185, 189, 152 N.W. 501, 502 (1915), we held the right of defense of person and property under article I, section 1 was sufficient to provide justification for killing deer engaged in the destruction of property on the premises of the defendant. A few months later, in *Osborne*, 171 Iowa at 692–93, 154 N.W. at 300, we struck down a state regulation requiring licensing of transient merchants in part on the ground that oppressive legislation cannot so burden harmless business activity as to render the right to life, liberty, and the use and enjoyment of property embraced in article I, section 1 to be valueless.

More recently, relying on the doctrine of necessity as articulated in *Ward*, we held in *State v. Reese*, 272 N.W.2d 863, 866–67 (Iowa 1978), that under the inalienable rights clause, a prisoner who alleged he was threatened by physical harm or rape if he remained in prison has a right to the defense of necessity in a case involving a prison escape. In *Gibb*, 286 N.W.2d at 188, we held the inalienable rights clause permits witnesses to limit their cross-examination if the witness makes an adequate evidentiary record that demonstrates that continuing to testify would jeopardize their safety or that of their family. In *Gacke*, 684

N.W.2d at 185, we held an immunity provision of Iowa law relating to feed lot operations violated article I, section 1.

Where liberty or property rights are allegedly infringed by a statute or ordinance, our inalienable rights cases have held that, even if the plaintiff's asserted interest is within the scope of the inalienable rights clause, the rights guaranteed by the provision are subject to reasonable regulation by the state in the exercise of its police power. *See Gacke*, 684 N.W.2d at 178 (property interest); *Gibb*, 286 N.W.2d at 186 (liberty interest); *Benschoter*, 232 Iowa at 1361–63, 8 N.W.2d at 486 (property interest). This formulation, of course, is virtually identical to the rational-basis due process test or equal protection tests under the Federal Constitution. *See Vilas v. Iowa State Bd. of Assessment & Review*, 223 Iowa 604, 612, 273 N.W. 338, 342 (1937) (noting that article I, section 1 and article I, section 6 of the Iowa Constitution "contain practically the same guarantees found in the 'due process clause' and 'equal protection of the law' clause of the Fourteenth Amendment"); *McGuire v. Chi., Burlington & Quincy R.R.*, 131 Iowa 340, 348–49, 108 N.W. 902, 905 (1906) (same).

Our approach to review of claims under article I, section 1 has not escaped criticism. As noted by Kempkes, 42 Drake L. Rev. at 633, such an approach, though perhaps convenient for courts also facing Fourteenth Amendment questions, "should . . . raise a few eyebrows." Kempkes notes the inalienable rights clause predated the passage of the Fourteenth Amendment by eleven years; the Iowa drafters placed a due process clause five clauses away in article I, section 6, which cannot be considered redundant; and the text of article I, section 1 is fundamentally different than either the Due Process or Equal Protection Clauses of the Federal Constitution. *Id.* at 634. If article I, section 1 is

to have some independent meaning, Kempkes suggests it cannot simply be a redundant provision with the same substantive scope of the due process clause of article I, section 6 given the significant difference in the text. *Id.* at 634–35.

Nonetheless, Jacobsma's only argument advanced in this case is that the Sioux City ordinance offends article I, section 1 of the Iowa Constitution because it is not a reasonable regulation and is an arbitrary restraint. We consider his argument below.

**D. Discussion.** We find Jacobsma's challenge under the inalienable rights clause in this case, like his due process claim, without merit. We think there is no doubt that the regulation to control speeding on state highways gives rise to a public interest generally. Despite the best efforts of many dedicated professionals in our departments of transportation and law enforcement, traffic accidents give rise to a terrible toll of fatal and nonfatal injuries. We are not regulating conduct that is purely or even largely private. The conduct at issue presents an increased risk to public safety on the open roads of the City.

The question then arises as to whether the regulation is arbitrary or unreasonable. As with the due process claim, however, the posture of the case limits the scope of Jacobsma's claim. The only question Jacobsma has standing to raise in this case is whether an ATE ordinance that creates prima facie liability based on ownership and photographic evidence is so arbitrary or unreasonable as to offend article I, section 1. The overwhelming majority of cases considering due process challenges to such a framework in civil ATE ordinances have concluded they are not so arbitrary or irrational to offend due process. *See Idris*, 552 F.3d at 566; *Agomo*, 916 A.2d at 194; *Krieger*, 978 N.Y.S.2d at 600–04. Under the rational basis framework adopted by the parties in this case, we

come to the same conclusion under article I, section 1 of the Iowa Constitution, even if we apply a somewhat more stringent rational basis test than would ordinarily result under federal due process caselaw.

**V. Preemption.**

**A. Introduction.** Under Iowa's home rule amendment, a municipality cannot enact an ordinance that expressly or impliedly conflicts with state law. *See* Iowa Const. art. III, § 38A; *Seymour*, 755 N.W.2d at 537–38. Jacobsma asserts that the Sioux City ordinance conflicts with Iowa Code sections 321.285, 321.493, and 321.484 (2013).

Iowa Code section 321.285 is a criminal statute relating to speed restrictions. Jacobsma argues that the Sioux City ATE ordinance is preempted because nothing in Iowa Code section 321.285 expressly authorizes a city to enact an ATE ordinance that imposes civil penalties on registered owners who might not be actual drivers of the vehicle.

Iowa Code section 321.493 relates to an owner's potential civil liability in cases in which damage occurs due to the negligence of a driver of the vehicle. While this provision authorizes vicarious liability on owners in certain circumstances, Jacobsma points out that it does not authorize holding a registered owner responsible for a speeding infraction.

Iowa Code section 321.484 imposes criminal liability upon an owner for a driver's moving violation if the vehicle owner requires or knowingly permits the operation of the vehicle upon a highway in any manner contrary to law. Jacobsma notes that under the Sioux City ATE ordinance, a registered owner may be responsible for speeding violations without showing a comparable state of mind.

The City responds by emphasizing that there is no express preemption of the Sioux City ATE ordinance. In order for implied

preemption to be triggered, the City contends that a local law must be "irreconcilable with state law." *Goodell v. Humboldt County*, 575 N.W.2d 486, 500 (Iowa 1998) (noting "[a] local ordinance 'is not inconsistent with a state law unless it is irreconcilable with the state law'" (quoting Iowa Code § 331.301(4))). The City notes that we upheld an ordinance similar to the Sioux City ATE ordinance from preemption attack in *Seymour*, 755 N.W.2d at 545. In *Seymour*, we emphasized that while provisions of Iowa Code chapter 321 imposed criminal sanctions for traffic violations, Iowa Code section 321.235 authorized municipalities to "'adopt additional traffic regulations which are not in conflict with the provisions of this chapter'" and that municipal ordinances imposing civil liability for infractions are not preempted. 755 N.W.2d at 539–44 (quoting Iowa Code § 321.235).

**B. Discussion.** We agree with the City that *Seymour* is controlling here, and that as a result, Jacobsma's preemption claims must fail. While Jacobsma correctly notes that his contention the Sioux City ordinance violates Iowa Code sections 321.493 and 321.494 was not specifically considered in *Seymour*, his contention that they preempt the Sioux City ordinance is without merit. Iowa Code section 321.493, relating to an owner's liability for damages resulting from a driver's negligence, is not "irreconcilable" with the Sioux City ATE ordinance, which deals with civil liability for speeding infractions. *Cf. Seymour*, 755 N.W.2d at 541 (noting in order to be considered irreconcilable, the "conflict must be unresolvable short of choosing one enactment over the other" and as here, "[n]o such bitter choice is presented"). Nor does Iowa Code section 321.484, which imposes *criminal* penalties in certain situations, provide a basis for preempting *civil* penalties for speeding violations that are consistent with substantive state law related to

speeding. *See id.* at 541–42 (noting "[n]othing in Iowa Code chapter 321 . . . addresses the question of whether a municipality may impose civil penalties on owners of vehicles through an ATE regime"). *Compare* Iowa Code § 321.484(4) (noting a violation is a simple misdemeanor), *with* Sioux City, Iowa, Mun. Code § 10.12.080(4) (establishing a civil penalty for violations).

## VI. Conclusion.

For all the above reasons, the judgment of the district court is affirmed.

**AFFIRMED.**